SCHIFF *v.* AUTOMOBILE INSURANCE COMPANY
OF HARTFORD, CONNECTICUT.

1. INSURANCE—CONSTRUCTION OF UNAMBIGUOUS POLICY.
   No construction, in the usual sense of the word, is called for if
   the language of an insurance policy is not ambiguous.

2. CONTRACTS—CONSTRUCTION.
   A contract will be construed so as to give effect to every word
   or phrase as far as practicable.

3. INSURANCE—CONSTRUCTION OF POLICY—WATER DAMAGE.
   Under policy insuring plaintiff cleaner and dyer against "water
   damage (meaning the accidental discharge, leakage, or over-
   flow of water, or steam from a plumbing system, overhead
   tanks, steam or hot water heating pipes, including radiators,
   standpipes for fire hose, sprinkler systems and/or by bursting
   steam or water pipes, boilers, or tanks within the premises),"
   plaintiff may not recover for damage to clothing from water
   which did not have its source in the plumbing system but
   which had accumulated on the outside and had run under the
   rear door and collected on the floor because drain pipe had
   become clogged with lint and other material.

   BUTZEL, C. J., and NORTH and MCALLISTER, JJ., dissenting.

Appeal from Wayne; Callender (Sherman D.), J.
Submitted June 14, 1939. (Docket No. 81, Calendar
No. 40,602.) Decided October 20, 1939.

Action by Harold Schiff, doing business as Rex
Cleaners & Dyers, against Automobile Insurance

Company of Hartford, Connecticut, a foreign corporation, for sums allegedly due under terms of an insurance policy for damage to clothes. Judgment for plaintiff. Defendant appeals. Reversed without a new trial.

*Shapero & Shapero* (*Samuel Shapero,* of counsel), for plaintiff.

*Gerald E. Schroeder* (*Edward B. Buchanan,* of counsel), for defendant.

Butzel, C. J. (*dissenting*). Plaintiff, doing business as the Rex Cleaners & Dyers, sued to recover under a contract of insurance with defendant company. The policy, which covered all kinds of lawful goods and articles accepted by plaintiff for cleaning and pressing services, insured plaintiff against

"Water damage (meaning the accidental discharge, leakage, or overflow of water, or steam from a plumbing system, overhead tanks, steam or hot water heating pipes, including radiators, standpipes for fire hose, sprinkler systems and/or by bursting steam or water pipes, boilers, or tanks within the premises)."

On the night of September 10, 1937, a heavy rain fell in the city of Detroit where plaintiff operated his cleaning and pressing establishment. Early the following morning, one of plaintiff's employees discovered that about 5 or 6 inches of water had accumulated on the floor of the outer workshop, damaging certain clothes which were lying in bins on the floor waiting to be dry cleaned. No pipes appeared to be leaking and the water did not "seem to be coming from the plumbing system." The rain, apparently,

had swept down from the outside of the building, had come under the door, and collected on the floor because the trap in the drain pipe had become clogged with lint and other materials. The drain was set perpendicularly in the floor and was covered with a grate level with the floor. Due to this congested condition, the water could not flow past the bell trap which was located a few inches below floor level. Consequently, the water backed up over the floor and soaked the clothes. Immediately upon removal of the obstruction in the pipe, the water ran down the drain.

The trial court upheld plaintiff's contention that the ensuing damage to the clothes was caused by a failure of the plumbing system to carry off the rain water and that this constituted "water damage (meaning the accidental discharge  *  *  *  or overflow of water  *  *  *  from a plumbing system.)" Defendant has appealed, contending that "from a plumbing system" means that the water originated in a plumbing system and that "from" is used to designate the source of the water. It is then argued that since the flooding was caused by the rain and not from water confined in pipes, radiators, boilers, or the like, recovery under the contract was improperly awarded.

It cannot be seriously questioned that the drain pipe, set in the floor of the workshop and connected with the main sewer, was an integral part of the drainage facilities of the premises and thus part of the "plumbing system." See *In re Nicholls,* 74 Cal. App. 504 (241 Pac. 399); *Owen* v. *Johnson,* 174 Pa. 99 (34 Atl. 549). The loss was caused because this drain failed to function properly; the water overflowed the floor as a result. The trial court rejected

the thesis that the policy contemplated that the water in the plumbing system should originate from within the system itself:

"We think the meaning of the word 'overflow' has nothing to do with the source of the water. The word only described the fact that there is a super-abundance of water which flows over the limits of the vessel or the basin, or the natural barriers which restrain the body of water."

In other words, although the water was from the rain, the "overflow" was, nonetheless, from the plumbing system just as the overflow of water from a sink would include water reaching the sink from a faucet above it.

It may be that in view of the fact that the policy catalogues various sources of water such as over-head tanks, heating pipes, radiators, et cetera, the interpretation contended for by defendant is a closer approximation to the original intention of the in-surer in framing the contract. However, the con-struction given by the trial court cannot be branded as unreasonable or capricious. When susceptible to two such readings, the policy must be construed strictly against the insurer who drew it. The lan-guage is far from unambiguous, and the doubt must be resolved in plaintiff's favor. *Birgbauer* v. *Ætna Casualty & Surety Co.,* 251 Mich. 614; *Boesky Brothers Twelfth Street Corp.* v. *United States Fidelity & Guaranty Co.,* 267 Mich. 628; *Hallock* v. *Income Guaranty Co.,* 270 Mich. 448. The judge reached the correct result.

Under this view it is unnecessary to discuss plain-tiff's claim that the damage was caused by "tor-nado, cyclone or windstorm."

The judgment should be affirmed, with costs.

NORTH and McALLISTER, JJ., concurred with BUTZEL, C. J.

SHARPE, J.   I am not in accord with the construction Mr. Justice BUTZEL gives to the following clause in the policy:

"Water damage (meaning the accidental discharge, leakage, or overflow of water, or steam from a plumbing system, overhead tanks, steam or hot water heating pipes, including radiators, standpipes for fire hose, sprinkler systems and/or by bursting steam or water pipes, boilers, or tanks within the premises)."

The rule of construction of an insurance policy is well stated in *Mondou* v. *Lincoln Mutual Casualty Co.*, 283 Mich. 353, where we said:

"If the language of an insurance policy is not ambiguous, no construction, in the usual sense of the word, is called for.   *Wertman* v. *Michigan Mutual Liability Co.*, 267 Mich. 508; *Indemnity Insurance Co. of North America* v. *Geist*, 270 Mich. 510.   A contract will be construed so as to give effect to every word or phrase as far as practicable.   *Hapke* v. *Davidson*, 180 Mich. 138.   This has always been the rule in this State."

In the case at bar the policy is a contract against loss by specifically enumerated perils.   It is undisputed that the water which did the damage did not have its source in the plumbing system, but accumulated on the outside and ran under the rear door. The policy speaks in terms of water damage from a plumbing system, overhead tanks, steam or hot water

pipes within the premises. The parties contemplated that damages would result only from discharge, leakage and overflow of water that came from the plumbing system. In the instant case, the water never came from the plumbing system.

The judgment is reversed, without a new trial. Defendant may recover costs.

Wiest, Bushnell, Potter, and Chandler, JJ., concurred with Sharpe, J.