POLKOW v CITIZENS INSURANCE COMPANY OF AMERICA

Docket No. 108437. Submitted May 9, 1989, at Grand Rapids. Decided October 17, 1989. Leave to appeal applied for.

Robert Polkow, doing business as Polkow Oiling Service, brought an action in the Ingham Circuit Court against his liability insurer, Citizens Insurance Company of America, seeking a declaration that Citizens was under a duty to defend and to provide coverage for costs, expenses, and potential liability arising from an administrative inquiry into possible environmental contamination associated with plaintiff's business operations in hauling and storing waste oil. The circuit court, James T. Kallman, J., required Citizens to provide reimbursement for the costs expended by plaintiff in conducting an investigation into possible ground water contamination at the prompting of the Department of Natural Resources and the United States Environmental Protection Agency. The court further granted a declaratory judgment that Citizens was required to defend and to afford coverage under the terms of its comprehensive general liability policy issued to plaintiff. Defendant appealed. The Insurance Environmental Litigation Association was granted permission to file an amicus curiae brief.

The Court of Appeals *held:*

1. The subjecting of the insured to administrative mechanisms mandating an environmental investigation and cleanup, backed by the power to expose the insured to a money judgment in a court of law, amount to a "suit" for purposes of invoking the coverage of the insurance policy. Such has occurred in this action.

2. Defendant's argument that its policy exclusion for pollution-related damages applies here is without merit. The exclusion applied unless "such discharge, dispersal, release or escape is sudden and accidental." Sudden is construed to mean unexpected and accidental to mean unintended. The evidence indi-

REFERENCES

Am Jur 2d, Insurance §§ 709, 710.

Construction and application of pollution exclusion clause in liability insurance policy. 39 ALR4th 1047.

cated that the contamination here was unexpected and unintended by plaintiff.

3. Response costs necessitated by an investigation into possible environmental contamination are damages within the meaning of the policy.

4. To the extent that governmental allegations against plaintiff are premised upon ground water contamination, defendant's arguments that it is not liable to plaintiff as a consequence of the policy provision excluding damage to property owned by or within the care, custody, or control of the insured is without merit. Adjacent landowners may have an adversely affected property interest in the ground water underlying the plaintiff's property. Alternatively, the public interest in the well-being of the environment and natural resources of the state is enough to defeat an exclusion for damage to the insured's own property.

Affirmed.

1. INSURANCE — ENVIRONMENT — SUIT — DAMAGES.

The subjecting of an insured to administrative mechanisms mandating an environmental investigation and cleanup, backed by the power to expose the insured to a money judgment in a court of law, amounts to a "suit" for purposes of triggering the insurer's duty to "defend any suit against the insured seeking damages"; the response costs necessitated by such an investigation into possible environmental contamination are "damages" within the meaning of such policy language.

2. INSURANCE — SUDDEN — ACCIDENTAL.

The term "sudden" means unexpected and the term "accidental" means unintended for purposes of construing an insurance policy providing an exclusion for pollution-related damage unless "such discharge, dispersal, release or escape is sudden and accidental."

3. INSURANCE — EXCLUSIONS — PROPERTY OWNED BY INSURED — CONTAMINATION OF GROUND WATER.

A provision in an insurance policy excluding coverage for damage to property owned by or within the care, custody, or control of the insured does not exclude coverage for damages premised upon the contamination of the ground water underlying the insured's property; the public interest in the well-being of the environment and natural resources of the state is enough to defeat such an exclusion for damages to the insured's own property.

*Richard J. Quist* and *Scott E. Pederson*, for plaintiff.

*Mika, Meyers, Beckett & Jones* (by *Douglas A. Donnell* and *Linda L. Blais*), for defendant.

Amicus Curiae:

*Provizer, Lichtenstein, Pearlman & Phillips, P.C.* (by *Randall E. Phillips*), and *Wiley, Wein & Fielding* (by *Thomas W. Brunner, James M. Johnstone,* and *John W. Cavilia*), of Counsel, for Insurance Environmental Litigation Association.

Before: HOLBROOK, JR., P.J., and SAWYER and NEFF, JJ.

PER CURIAM. Plaintiff brought suit against his liability insurer, defendant Citizens Insurance Company of America, seeking a declaration that defendant was under a duty to defend and to provide coverage for costs, expenses, and potential liability arising from an administrative inquiry into possible environmental contamination associated with plaintiff's business operations in hauling and storing waste oil. The circuit court required defendant to provide reimbursement for the costs expended by plaintiff in conducting an investigation into possible ground water contamination at the prompting of the Department of Natural Resources and the United States Environmental Protection Agency. The court further granted a declaratory judgment that defendant was required to defend and to afford coverage under the terms of its comprehensive general liability policy issued to plaintiff. Defendant appeals as of right, and we affirm.

A perusal of the briefs indicates that, generally, the question whether or not the standard phraseol-

ogy of liability policies covers legal responsibility for environmental pollution is hotly disputed and has given rise to conflicting judicial holdings. However, the case law developed in Michigan, particularly by this Court, provides clear guidance in resolving the issues raised in the instant case, and we are not persuaded by the lengthy, policy-oriented arguments of appellant and amicus curiae to depart from our past precedent or to chart a new course of law for this jurisdiction. Hence, our decision for affirmance.

The policy provides that the insurer

> will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such . . . property damage . . . and may make such investigation and settlement of any claim or suit as it deems expedient.

Because no complaint was filed by the DNR or the EPA against plaintiff in a court of law, defendant argues that its duty to defend a "suit against the insured seeking damages" has not yet been triggered.

Contrary to this argument, another panel of this Court in *United States Aviex Co v Travelers Ins Co*, 125 Mich App 579; 336 NW2d 838 (1983), construed very similar policy language to trigger the insurer's duty to defend and indemnify, notwithstanding that the insured's cooperation in the investigation of environmental contamination had been induced by the DNR without formal resort to the courts (although the Attorney General filed an

action for injunctive relief during the interim between the declaratory judgment trial and this Court's resolution of the appeal). Although the case was conceptually decided on the question of whether the DNR was seeking damages within the meaning of the policy, we note that the "suit" requirement was part of the quoted portions of the policy. The Court reasoned:

> Under MCL 323.10; MSA 3.529(1), the Attorney General is empowered to file a suit "to recover the full value of the injuries done to the natural resources of the state . . . ." This language clearly indicates the state's interest in its natural resources. Defendant agrees that the contamination of subterranean and percolating water as a result of the fire is "physical injury to tangible property" within the terms of the insurance policy. If the state were to sue in court to recover in traditional "damages," including the state's costs incurred in cleaning up the contamination, for the injury to the ground water, defendant's obligation to defend against the lawsuit and to pay damages would be clear. It is merely fortuitous from the standpoint of either plaintiff or defendant that the state has chosen to have plaintiff remedy the contamination problem, rather than choosing to incur the costs of clean-up itself and then suing plaintiff to recover those costs. The damage to the natural resources is simply measured in the cost to restore the water to its original state. [*Id.*, pp 589-590.]

Analysis of the policy terms "suit" and "damages" are not dissimilar: damages are traditionally a remedy associated with a lawsuit brought in a court of law. Given the reasoning in *Aviex,* viewed against the backdrop of the nearly identical policy terms, inferring that the *Aviex* panel would not find the absence of a complaint filed in a court of

law to preclude coverage seems a logical, if not obvious, extension of its precise holding.[1]

Our reading of *Aviex* is in keeping with *Fireman's Fund Ins Companies v Ex-Cell-O Corp,* 662 F Supp 71, 75 (ED Mich, 1987), where, in reliance on the *Aviex* decision, it was held that "a 'suit' includes any effort to impose on the policyholders a liability ultimately enforceable by a court, and that 'damages' include money spent to clean up environmental contamination." Cf. *Detrex Chemical Industries, Inc v Employers Ins of Wausau,* 681 F Supp 438, 452-455 (ND Ohio, 1987)(DNR letter constituted a "suit" because it invoked a statutory right to an adjudicatory hearing subject to administrative review).

In this case, the DNR by letter indicated to plaintiff that it was "requiring" plaintiff to undertake a hydrogeological investigation of the extent of ground water contamination and to take corrective action to remedy any contamination attributable to plaintiff's conduct. The letter further required plaintiff to submit within thirty days a plan for conducting a study of the contamination and a cleanup. As authority for its actions, the DNR cited the Hazardous Waste Management Act, MCL 299.501 *et seq.*; MSA 13.30(1) *et seq.,* and the water resources commission act, MCL 323.1 *et seq.*; MSA 3.521 *et seq.* The former enactment authorizes the Attorney General to bring suit against a violator "to recover the full value of the damage done to the natural resources of this state and the costs of surveillance and enforcement by the state

---

[1] Judge HOLBROOK acknowledges that some of the views expressed in his concurrence in *City of Evart v Home Ins Co,* unpublished opinion per curiam of the Court of Appeals, decided April 10, 1989 (Docket No. 103621), lv pending, are inconsistent with this panel's opinion. Upon further consideration of the issues argued in this case, Judge HOLBROOK is persuaded to change his mind regarding those inconsistent views.

resulting from the violation." MCL 299.548(9); MSA 13.30(48)(9). The latter enactment similarly authorizes suit "to recover the full value of the injuries done to the natural resources of the state and the costs of surveillance and enforcement by the state resulting from the violation." MCL 323.10; MSA 3.529(1). The Comprehensive Environmental Response, Compensation, and Liability Act, 42 USC 9601 *et seq.,* cited by the EPA in correspondence with plaintiff, provides for the costs of an environmental cleanup of hazardous waste to be borne by the polluter. 42 USC 9607. The foregoing is not intended to set forth in exhaustive detail the administrative mechanisms available to governmental agencies entrusted with safeguarding the environment, but only to illustrate some of the impressive array of those mechanisms available to coerce otherwise noncooperative persons who may be legally responsible for such contamination. When faced with the alternative of potentially enormous liability for money damages in a civil suit, it is little wonder that operators of businesses contacted by the DNR attempt to resolve allegations of contamination of the environment without resorting to the courts for an ultimate determination of their responsibility. In our view, subjecting the insured to administrative mechanisms mandating an environmental investigation and cleanup, backed by the power to expose the insured to a money judgment in a court of law, amounts to a "suit" for purposes of invoking the coverage of the policy. We hold that this has occurred in this case.

The policy further provides an exclusion for pollution-related damage unless "such discharge, dispersal, release or escape is sudden and accidental." Defendant argues that the discharge of pollutants in this case was not sudden because it occurred over a period of time as a result of plain-

tiff's ongoing business activity of storing and hauling waste oil. This argument is without merit. In *Jonesville Products, Inc v Transamerica Ins Group*, 156 Mich App 508; 402 NW2d 46 (1986), lv den 428 Mich 897 (1987), this Court held that the frequency of the conduct resulting in the release of contaminants did not render the release something other than "sudden" for purposes of a nearly identical pollution exclusion clause. "Sudden" was construed to mean "unexpected" and "accidental" to mean "unintended." *Id.,* p 512. See also *United States Fidelity & Guarantee Co v Thomas Solvent Co*, 683 F Supp 1139, 1155-1161 (WD Mich, 1988).

There is nothing in this case to indicate that plaintiff expected or intended to spill pollutants that would contaminate the soil or ground water. Whether or not the contamination detected by the DNR ultimately is determined to be attributable to plaintiff does not matter. The essential allegation against plaintiff is that his business activities resulted in such contamination, and the evidence submitted below indicates without contradiction that the contamination was unexpected and unintended from his standpoint.

Defendant asserts that response costs necessitated by an investigation into possible environmental contamination are not damages within the meaning of the policy. We disagree and adhere to the contrary holding in *Aviex*, which we discussed earlier in this opinion. See *Thomas Solvent Co, supra,* p 1168 ("[F]rom the standpoint of the insured damages are being sought for injury to property. It is that contractual understanding rather than some artificial and highly technical meaning of damages which ought to control."). This case is not like *Jones v Farm Bureau Mutual Ins Co*, 172 Mich App 24; 431 NW2d 242 (1988), where it was held that an insurer had no duty to

defend a suit for injunctive relief to abate a public nuisance. What is sought here is little, if any, distinguishable from money damages.

Defendant argues that the reimbursement sought by plaintiff in this case is not covered as a consequence of the policy provision excluding damage to property owned by or within the care, custody, or control of the insured. Defendant contends that any contamination in this case is limited to plaintiff's own property. In *Aviex, supra,* pp 590-592, the Court rejected this same argument by relying on the common-law reasonable use rule of water rights to demonstrate that adjacent landowners had an adversely affected property interest in the ground water underlying the insured's property. We agree and find *Aviex* applicable in the case at bar, at least to the extent that governmental allegations against plaintiff are premised upon ground water contamination.

Alternatively, we conclude that the alleged contamination in this case falls outside of the policy exclusion for damage to the insured's own property for reasons broader in scope. We hold that these allegations are essentially for injury to the public interest in the well-being of the environment and natural resources of this state. This public interest is apparent in the tenor of the statutory framework for environmental protection which, as we have already alluded, vests the DNR and the Attorney General with substantial powers to preserve and protect the environment. This public interest was noted in *Aviex, supra,* p 589, where the Court stated that the statutory provision of MCL 323.10; MSA 3.529(1) authorizing suit by the Attorney General for civil damages to natural resources "clearly indicates the state's interest in its natural resources." That this public interest is enough to defeat an exclusion for dam-

age to the insured's own property was acknowledged in *Ex-Cell-O Corp, supra,* p 75, and *Upjohn Co v New Hampshire Ins Co,* 178 Mich App 706, 720; 444 NW2d 813 (1989): "We note that the improper release of toxic wastes may cause property damage not only to the actual owner of the land, but also to the government because of its independent interest, behind the titles of its citizens, in all the air and earth (i.e., its natural resources) within its domain."

In view of the foregoing issues, we conclude that summary disposition was appropriate because review of the documentary evidence submitted below admits no genuine issue of material fact, i.e., it is not possible for defendant to prevail at trial because of factual deficiencies that cannot be overcome. See *Royal Globe Ins Co v Great American Ins Corp,* 118 Mich App 735, 737; 325 NW2d 556 (1982). See also *Allstate Ins Co v Freeman,* 432 Mich 656; 443 NW2d 734 (1980). Plaintiff is entitled to declaratory judgment pursuant to MCR 2.116(C)(9) and (10) as a matter of law.

Affirmed.