**FL AEROSPACE, Plaintiff–Appellant, Cross–Appellee,**

v.

**AETNA CASUALTY & SURETY CO., Defendant–Appellee, Cross–Appellant.**

**Nos. 88–2051, 88–2106.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 29, 1989.

Decided March 1, 1990.

Rehearing and Rehearing En Banc Denied March 17, 1990.

Wallace K. Sagendorph (argued), Troy, Mich., for plaintiff-appellant.

Robert D. Brignall (argued), Charles W. Browning, Vandeveer, Garzia, Tonkin, Kerr, Heaphy, Moore & Sills, Detroit, Mich., for defendant-appellee.

Before: MERRITT, Chief Judge; RYAN, Circuit Judge; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

FL Aerospace ("Aerospace"), the successor in interest to Midland–Ross Corporation ("Midland–Ross"), the original insured party under Comprehensive General Liability ("CGL") policies issued by Aetna Casualty & Surety Company ("Aetna"), appeals a bench trial decision of no cause of action in favor of Aetna.[1] Aetna cross-appeals the district court's denial of its motion for summary judgment and cross-appeals the bench trial decision to the extent that it denied some of Aetna's defenses. This diversity action arose out of Aetna's refusal to indemnify Midland–Ross for money Midland–Ross expended to settle two private nuisance actions and to pay Midland–Ross' assessed portion of costs associated with an Environmental Protection Agency ("EPA")–mandated clean-up of the Berlin and Farro industrial waste site ("Berlin & Farro site") in Swartz Creek, Michigan. Aetna refused to indemnify Midland–Ross, contending that, in violation of policy provisions, Midland–Ross had failed to give proper notice of the claims and had made voluntary payments, that the clean-up costs were not "damages" and the loss did not constitute an "occurrence" within the meaning of the policy, and that the policy's pollution exclusion provision barred recovery.

After denying Aetna's motion for summary judgment,[2] the district judge found that there was an "occurrence" within the meaning of the policy and that the pollution exclusion was not a bar to recovery; however, he also found that Midland–Ross had failed to notify Aetna timely in writing as required by the policy and that this failure materially prejudiced Aetna. The district judge also found that any payments made to settle the nuisance claims and the clean-

---

1. Aerospace succeeded Midland–Ross some time after Midland–Ross filed the complaint on February 22, 1987. We will refer to the insured as Midland–Ross throughout the opinion.

2. The district court, in resolving Aetna's summary judgment motion, agreed with Midland–Ross that the clean-up costs were "damages" within the meaning of the policy.

up claim were voluntary. He held, therefore, that there was no cause of action against Aetna. We believe, however, that the pollution exclusion provision does bar recovery under the facts of this case; therefore, we do not reach the other issues. Accordingly, we affirm the judgment of no cause of action in favor of Aetna on that basis.

### FACTS

Midland–Ross was insured for the period January 1, 1966 through January 1, 1975, under CGL policies issued by Aetna. During the period between April, 1973 and September, 1975, Midland–Ross had liquid industrial waste removed from its manufacturing facility in Owosso, Michigan by Berlin & Farro, which was licensed by the state of Michigan to haul and store industrial waste. Berlin & Farro transported the liquid waste in its trucks and stored it at its site in Swartz Creek.

Midland–Ross was named as one of numerous defendants in two separate civil actions in nuisance filed in October, 1983 and March, 1984, respectively, by individuals living near the Berlin & Farro site. We will refer to these actions in this opinion as the *Bradford* and *Acker* actions. The plaintiffs in both actions alleged that the waste at the site had contaminated the earth there and that the contamination was likely to migrate to their residences. They alleged bodily injury and property damage as a result of the nuisance created by the Berlin & Farro site.

In addition to this potential tort liability, Midland–Ross received notification from the EPA in September, 1983, that an investigation of the Berlin & Farro site had resulted in a finding that Midland–Ross was possibly in violation of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9675. Subsequently, Midland–Ross consented to pay its share of EPA–mandated clean-up costs in an amount equal to the percentage Midland–Ross' waste was to the total waste stored at the Berlin & Farro site.

Although Midland–Ross' representatives spoke informally with Aetna's sales agent in late 1983 about the filing of the *Bradford* action, no written notice was given concerning the civil actions until November, 1984; and none was given regarding the EPA matter until June, 1985, some fifteen months after Midland–Ross had agreed to pay its portion of the clean-up costs. Midland–Ross eventually was assessed a clean-up amount of $508,561.00, and it settled the *Bradford* and *Acker* matters in late 1986 for a total of $61,503.42. Once all settlements were final and binding on Midland–Ross, the company requested reimbursement for the clean-up and settlement amounts, as well as for related attorney fees and costs. Some seven weeks later, after having received no favorable response from Aetna, Midland–Ross filed this action.

Aetna moved for summary judgment, contending that, on the undisputed record, each and all of its defenses heretofore stated prevented recovery. The district court held that the payment required in the clean-up proceeding was "damages" within the meaning of the policy and that the other defenses of Aetna raised issues of fact that could not be disposed of at the summary judgment stage.

During the trial, the district court heard uncontroverted testimony from John Shauver of the EPA about contamination at the site. Shauver testified that he investigated the Berlin & Farro site following complaints in 1972–73 about odors and the general operation of the incinerator. Either he or others employed by him were at the site at least weekly during the period 1972 through January 1, 1975, when Aetna's coverage applied.

Shauver learned that Berlin & Farro maintained plastic-lined storage lagoons for liquid waste. Each truck that transported waste into the site was required to carry a liquid waste removal record that identified the waste source and the description and quantity of waste involved. Shauver recalled that some of the vehicles carried waste from Midland–Ross' facility in Owosso.

Shauver testified that because truck drivers were usually in a hurry or not paying attention, it was not uncommon for them to pull hoses out of the lagoon without first allowing the hoses to drain, thereby allowing one or two gallons of waste to fall onto the ground outside of the lagoon. Because Shauver and other EPA employees were not present at all times and Berlin & Farro operated the site twenty-four hours a day, he could not testify as to the total amount of spillage. He estimated, however, that there was a substantial amount. Notwithstanding that estimate, he did not testify that any of the spillage came from the Midland–Ross facility.

Shauver also testified that in 1978, the north lagoon swelled and exceeded its bank as a result of severe storms, and in 1981, while Berlin & Farro was attempting to solidify the north lagoon, contaminated soil became mixed with uncontaminated soil, resulting in the need for a clean-up by a state agency. Both of these events, of course, came well after Aetna's coverage had ceased.

After the bench trial, the district court found that there was an "occurrence" within the meaning of the policy and that the "sudden and accidental" exception to the pollution exclusion clause applied so that the pollution exclusion clause did not bar recovery. However, the district court found that informal verbal communications with Aetna's sales agent did not satisfy the policy's notice requirement, that the written notice to Aetna was untimely and prejudicial to Aetna, and that any payments by Midland–Ross were voluntarily made. The court granted judgment of no cause of action in favor of Aetna.

## ANALYSIS

We conclude, as we have heretofore indicated, that the district court erred in its determination that the pollution exclusion provision does not apply. Accordingly, because we conclude that the pollution exclusion does apply, we affirm the district court's decision dismissing the claim against Aetna.

Aetna's policy provides coverage for bodily injury or property damage caused by an occurrence. An "occurrence" is defined as

an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured[.]**

The policy excludes coverage, however, for damage that is caused by pollution, unless the damage is caused by a "sudden and accidental" discharge, dispersal, release or escape of the pollutant. The pollution exclusion provides in its entirety:

**This insurance does not apply:**

. . . .

(f) to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.*

(Emphasis added.) There is no question but that any damages in this case were caused by pollution. It is the "sudden and accidental" exception to the pollution exclusion that we must interpret to decide whether or not coverage is barred in this case.

We begin by stating the well-known rule that a federal court sitting in a diversity case must apply the state law that the state court in that state would apply. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Furthermore, the federal court must apply a state's law in accordance with the controlling decisions of the highest court of that state. *Vandenbark v. Owens–Illinois Glass Co.,* 311 U.S. 538, 543, 61 S.Ct. 347, 350, 85 L.Ed. 327 (1941). Michigan law, therefore, controls in this case, but the Michigan Supreme Court has never interpreted the policy provision at issue, although the meaning of "sudden and accidental" has been litigat-

ed often in Michigan,[3] and this court unsuccessfully attempted to have the Michigan Supreme Court answer the question in 1989.[4] We must, therefore, determine what the Michigan Supreme Court would decide if the question were before it. To make this determination, we must look at available data on the subject. *Clutter v. Johns–Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir.1981).

Midland–Ross urges us to follow, as the district court did, *Jonesville Products, Inc. v. Transamerica Ins. Group*, 156 Mich. App. 508, 402 N.W.2d 46 (1986), *leave to appeal denied*, 428 Mich. 897 (1987), which held that the "sudden and accidental" exception to the pollution exclusion provision means that the exclusion does not apply if the discharges were "unexpected" and "unintended" from the standpoint of the insured. In other words, *Jonesville* interpreted the requirement of the exception that the discharge be "sudden" to mean only that it be "unexpected." The *Jonesville* court said:

> We find that the circuit court failed to distinguish between the frequency of acts which resulted in the release of contaminants and plaintiff's knowledge or notice of the release of pollutants as a result of those acts.
>
> . . . .
>
> The circuit court erred in finding that the allegation of "continuous" negligent discharge of waste onto Jonesville's proper-

ty took … the … complaint out of the defendant's exception for "sudden and accidental" release. It is possible that the releases could have been sudden, i.e., unexpected, and accidental, i.e., unintended, and thus outside the exclusion. Plaintiff's affiant swore that plaintiff had no knowledge of prior complaints regarding dumping or spillage.

*Id.* at 512, 402 N.W.2d at 48. Thus, *Jonesville*, without explanation, failed to give any temporal meaning to the word "sudden" in the "sudden and accidental" exception to the pollution exclusion.[5]

Aetna urges that we not follow *Jonesville*, claiming that its definition of "sudden and accidental" distorts the plain meaning of the phrase. Aetna contends that we should define the term "sudden" as we did in *United States Fidelity & Guaranty Co. v. Star Fire Coals, Inc.*, 856 F.2d 31, 34 (6th Cir.1988), a Kentucky diversity case in which this court construed the "sudden and accidental" exception by giving the word "sudden" a temporal meaning.

■ Although we recognize that the Michigan Court of Appeals in *Jonesville* offered no analysis in announcing its definition, we are mindful that an intermediate appellate court's judgment that announces a rule of law is "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by

---

**3.** See *Fireman's Fund Ins. Co. v. Ex–Cell–O Corp.*, 702 F.Supp. 1317 (E.D.Mich.1988) ("Ex–Cell–O II"); *United States Fidelity & Guar. Co. v. Thomas Solvent Co.*, 683 F.Supp. 1139 (W.D. Mich.1988); *Fireman's Fund Ins. Co. v. Ex–Cell–O Corp.*, 685 F.Supp. 621 (E.D.Mich.1987) ("Ex–Cell–O I"); *American States Ins. Co. v. Maryland Casualty Co.*, 587 F.Supp. 1549 (E.D. Mich.1984); *Polkow v. Citizens Ins. Co. of America*, 180 Mich.App. 651, 447 N.W.2d 853 (1989); *Upjohn Co. v. New Hampshire Ins. Co.*, 178 Mich.App. 706, 444 N.W.2d 813 (1989); *Protective Nat'l Ins. Co. v. City of Woodhaven*, No. 101968 (Mich.Ct.App. Sept. 28, 1988) (unpublished), *leave to appeal denied*, 432 Mich. 927 (1989); *Shue v. D & B Brine, Inc.*, No. 92404 (Mich.Ct.App. July 27, 1987) (unpublished); *Jonesville Prod., Inc. v. Transamerica Ins. Group*, 156 Mich.App. 508, 402 N.W.2d 46 (1986), *leave to appeal denied*, 428 Mich. 897 (1987). There presently are other cases pending before this court, including *International Surplus Lines v.*

*Anderson Dev.*, No. 87–2102, and *Grant Southern Iron & Metal v. CNA Ins.*, No. 89–1049.

**4.** A panel of this court certified this question to the Michigan Supreme Court in *International Surplus Lines v. Anderson Dev.*, No. 87–2102, on January 26, 1989. The Michigan Supreme Court declined to answer the question on July 10, 1989.

**5.** In *Jonesville*, the issue that the trial court had before it, on summary judgment, was whether the insurer had a duty to defend the insured because the "sudden and accidental" exception to the pollution exclusion did not apply. The *Jonesville* court, applying the Michigan rule that the insurer has a duty to defend if the claim is even arguably covered by the policy, gave this interpretation of the "sudden and accidental" exception to the pollution exclusion. The issue in the instant case focuses on the insurer's duty to indemnify.

other persuasive data that the highest court of the state would decide otherwise.'" *Woodruff v. Tomlin,* 616 F.2d 924, 929 (6th Cir.) (quoting from *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)), *cert. denied,* 449 U.S. 888, 101 S.Ct. 246, 66 L.Ed.2d 114 (1980). Moreover, a federal court should not reject a state rule just because it was not announced by the highest court of the state, even if the federal court believes that the rule is unsound in principle. *Id.* at 928–29. We turn our attention, therefore, to other sources of law on this question to determine whether the Michigan Supreme Court would follow *Jonesville.*

Michigan law is settled concerning the interpretation of provisions in insurance contracts. In Michigan, the rules for the construction of an insurance contract are the same as for any other written contract. *Hall v. Equitable Life Assur. Soc'y,* 295 Mich. 404, 295 N.W. 204 (1940). Any ambiguous terms must be construed against the insurer and in favor of the insured, because the insurer drafts the document. *Mays v. Insurance Co. of N. Am.,* 407 Mich. 165, 284 N.W.2d 256 (1979). On the other hand, if the terms in the policy are not ambiguous, "no construction, in the usual sense of the word, is called for." *Schiff v. Automobile Ins. Co.,* 290 Mich. 457, 287 N.W. 920 (1939); *see also Indemnity Ins. Co. of N. Am. v. Geist,* 270 Mich. 510, 259 N.W. 143 (1935). When the words are free from ambiguity, "the instrument is always to be construed according to the strict, plain, common meaning of the words themselves." *Hall,* 295 Mich. at 408, 295 N.W. at 206. Moreover, the plain meaning

of words should not be perverted merely to benefit the insured party. *Wozniak v. John Hancock Mut. Ins. Co.,* 288 Mich. 612, 286 N.W. 99 (1939).

■ We think that the terms "sudden" and "accidental" are not ambiguous and should be given their plain, everyday meaning. We note that this finding is not at odds with the *Jonesville* decision to the extent that nothing in that opinion or in subsequent Michigan Court of Appeals decisions relying on it have indicated that the terms should be given anything other than their plain meaning.[6] The dictionary definition of "sudden" is "happening, coming, made or done quickly, without warning or unexpectedly; abrupt." *American College Dictionary* 1209 (1970). *See also Webster's Third New Int'l Dictionary* 2284 (1961). The term "accidental" means "happening by chance" or "unintentional" or "fortuitous." *American College Dictionary* 8; *Webster's Third New Int'l Dictionary* 11. These definitions comport with the common understanding of the terms as they are used in everyday parlance. A sudden and accidental event is one that happens quickly, without warning, and fortuitously or unintentionally.

We recognize that our interpretation of the "sudden and accidental" exception departs from the Michigan Court of Appeals decision in *Jonesville* as well as from several subsequent Michigan Court of Appeals decisions;[7] however, we believe that the Michigan Supreme Court, following its own rules of insurance contract interpretation, would find, as we have found,[8] that the word "sudden" has a plain, everyday temporal component and would interpret the "sudden and accidental" exception in light

---

**6.** The Michigan Court of Appeals steadfastly has affirmed its *Jonesville* definition. *See Polkow v. Citizens Ins. Co. of Am.,* 180 Mich.App. 651, 447 N.W.2d 853 (1989); *Upjohn Co. v. New Hampshire Ins. Co.,* 178 Mich.App. 706, 444 N.W.2d 813 (1989); *Protective Nat'l Ins. Co. v. City of Woodhaven,* No. 101968 (Mich.Ct.App. Sept. 28, 1988) (unpublished), *leave to appeal denied,* 432 Mich. 927 (1989). None of these cases, however, have held that the terms "sudden" and "accidental" are ambiguous. Moreover, the decision in *Shue v. D & B Brine, Inc.,* No. 92404 (Mich.Ct.App. July 27, 1987), although not citing to *Jonesville,* dealt with the same question that

we now are dealing with, and that opinion stated that "[p]laintiffs' broad allegations do not rule out the possibility of a discharge which was 'sudden and accidental,' *as those terms are commonly understood.*" (Emphasis added.)

**7.** *See* cases cited *supra* at note 6.

**8.** *See also Fireman's Fund Ins. Co. v. Ex–Cell–O Corp.,* 702 F.Supp. 1317, 1325 (E.D.Mich.1988) ("Ex–Cell–O II"), in which the district judge, applying Michigan law, reached the same conclusion that we reach here.

of that finding. Moreover, we think it is worthy of noting that the Michigan Court of Appeals, in a case subsequent to *Jonesville,* itself indicated that the word "sudden" in the "sudden and accidental" exception has a temporal component. In *Protective National Ins. Co. v. City of Woodhaven,* No. 101968 (Mich.Ct.App. Sept. 28, 1988), *leave to appeal denied,* 432 Mich. 927 (1989), an unpublished case, a child died from alleged exposure to a pesticide sprayed on trees by the city. The fumes from the pesticide allegedly entered his family's home through an open window from the street where the spraying occurred. The court of appeals, in reviewing the trial court's grant of summary judgment in favor of the insurer on the question of whether the insurer had a duty to defend, stated:

> [W]hile it is clear from the record that the release of the pesticide was a regular, intentional activity of defendant, it is arguable that the "dispersal" or "escape" of the pesticide to an area where it could come in contact with Ronald Vann's skin was both a sudden and accidental event, which caused injury to Ronald Vann. *Potentially, a temporal event, i.e., a sudden gust of wind, blew the pesticide into the window of the Vann's [sic] house causing the injury.*

(Emphasis added.) *Id.* at 4.

 Turning now to the facts of the case at hand, we cannot agree with Aetna's position that simply because Berlin & Farro transported some 500,000 gallons of Midland–Ross waste to the Berlin & Farro site over a period of years, any discharges cannot be considered sudden and accidental. The "sudden and accidental" exception applies to the discharge, release, dispersal or escape of pollutants into the environment. Mere delivery of waste for storage at a facility that is licensed to store waste is not a discharge of pollutants into the environment.

**9.** Midland–Ross does not contend that it has shown that the evidence supports such a finding. Its position in this case apparently was that, relying on *Jonesville,* it did not need to supply that proof.

 On the other hand, there is no evidence from which the trial court could have found that any pollution damage that was the subject of the October, 1983 and March, 1984 nuisance actions or the EPA clean-up was caused by any "sudden and accidental" discharge of any Midland–Ross pollutant from the Berlin & Farro facility, the last of which was delivered to the site in September, 1975.[9]

Accordingly, we AFFIRM the judgment of the district court of no cause of action in favor of Aetna.