ZIEBART INTERNATIONAL CORPO-
RATION and Ziebart Corporation,
Plaintiffs–Appellants,

v.

CNA INSURANCE COMPANIES; Trans-
portation Insurance Company; and Val-
ley Forge Insurance Company, Defen-
dants–Appellees.

No. 94–1361.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 6, 1996.

Decided March 8, 1996.

Steven M. Raymond (argued and briefed), Marilynn K. Arnold (briefed), May, Simpson & Strote, Bloomfield Hills, MI, for Plaintiffs-Appellants.

Mary Massaron Ross (argued and briefed), Stanley A. Prokop, Plunkett & Cooney, Detroit, MI, for Defendants-Appellees.

Before: ENGEL, BROWN, and MILBURN, Circuit Judges.

BAILEY BROWN, Circuit Judge.

The plaintiffs ("Ziebart") appeal from the district court's entry of summary judgment for the defendants ("the insurers") in a declaratory judgment action concerning the insurers' duty to represent Ziebart on appeal under an insurance contract. The district court heard the case in its diversity jurisdiction, and it based its decision primarily on a jury verdict, rendered in underlying Michigan state court wrongful death litigation, which found Ziebart liable for an intentional tort. While Ziebart's appeal was pending before this court, however, the Michigan Court of Appeals reversed the judgment based on that verdict. *LaDuke v. Ziebart Corp.*, 211 Mich.App. 169, 535 N.W.2d 201, 203–04 (1995) (per curiam). Ziebart contends that the insurers, which defended Ziebart at trial, had a duty to continue that defense on appeal. The insurers argue that they never had a duty to defend Ziebart at all. For the reasons that follow, we agree with Ziebart and REVERSE.

## I. FACTS AND BACKGROUND

### A. The State Trial Court Wrongful Death Litigation.

Ziebart operates automotive service centers and had workers' compensation and gen-

eral liability insurance policies with the insurers.[1] In April of 1989, Ziebart's regional branch operations manager Michael LaDuke and other Ziebart officials decided to discharge Robert Zielin, the manager of a Ziebart branch in Westland, Michigan, because of his poor work performance. Zielin apparently learned of the plan to discharge him and sought a meeting with LaDuke, who was his immediate supervisor. LaDuke met with Zielin, then fired him. Shortly afterward, Zielin shot and killed LaDuke in the middle of a public street.

LaDuke's estate filed a wrongful death action in Michigan state court against Ziebart and Zielin.[2] In its amended complaint, the estate alleged that Ziebart ordered LaDuke to fire Zielin with willful disregard of its knowledge that Zielin "was mentally unstable, and ... that injury was certain or substantially certain to occur."

The estate's claim faced one obvious obstacle: the provision in the Michigan Workers' Disability Compensation Act ("the Act") which makes the Act an employee's exclusive remedy against an employer for a personal injury, except where an employer commits an intentional tort. The Act also declares that:

> An intentional tort shall exist only when an employee is injured as a result of a *deliberate act* of the employer and the employer *specifically intended an injury*. An employer shall be deemed to have intended to injure if the employer had *actual knowledge* that an injury was certain to occur *and willfully disregarded* that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court.

Mich.Comp.Laws Ann. § 418.131(1) (West Supp.1995) (emphases added).

After receiving the estate's complaint, Ziebart contacted the insurers and requested that they undertake Ziebart's defense and indemnify it for any losses. The insurers agreed to defend the claim, but expressly reserved their right to withdraw from the defense, citing, *inter alia,* an intentional tort exclusion clause in Ziebart's policy. The policy excluded from coverage "bodily injury intentionally caused or aggravated by [Ziebart]."

Ziebart moved for summary judgment at the end of discovery in the wrongful death case, asserting that the LaDuke estate's complaint failed to state a claim, particularly with regard to Ziebart's having had actual knowledge of certain injury and willfully disregarding such knowledge. The Michigan trial judge denied the motion, and after a four-day trial, the jury, applying the trial judge's instruction, found that the murderer, Zielin, was not liable to the estate. The jury also found, however, that Ziebart *was* liable for $2.1 million in damages. In response to special interrogatories, the jury specifically found that (1) Ziebart had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge, and (2) Ziebart performed an intentional act which resulted in LaDuke's wrongful death.

The insurers then wrote Ziebart and stated that they would, after posttrial motions, withdraw their defense of the wrongful death claim because of the policy's intentional tort exclusion clause. The court denied Ziebart's motions for judgment notwithstanding the verdict and for a new trial. In denying the motion for a new trial, the state trial court expressly held that it was imputing the knowledge of the murderer, Zielin, to the corporate defendant, Ziebart, saying, "He had actual knowledge of the murder. He committed the murder." Ziebart, without the aid of the insurers, appealed to the Michigan Court of Appeals.

## B. The Federal Court Declaratory Judgment Litigation.

In the meantime, Ziebart filed a declaratory judgment action against the insurers in

---

1. Transportation Insurance Company issued a workers' compensation and employer's liability policy to Ziebart, while Valley Forge Insurance Company issued an "umbrella" policy to Ziebart. Both companies are wholly-owned subsidiaries of CNA Financial Corporation; no company named "CNA" actually issued a policy in this case.

2. Zielin did not defend the estate's wrongful death action. Soon after the shooting, Zielin was convicted of first degree murder and incarcerated. He subsequently died. *LaDuke,* 535 N.W.2d at 203 n. 1.

Michigan state court, and the insurers removed the case to federal district court on diversity grounds. Ziebart sought declarations that the insurers had a duty to represent Ziebart on appeal, and that the insurers would be liable to Ziebart for losses associated with the wrongful death action. Because the issues were purely legal and no discovery was necessary, the parties agreed to resolve the matter on the insurers' motion for summary judgment.

The district court held that, since the Michigan jury found Ziebart guilty of an intentional tort, and since an intentional tort was the only theory under which LaDuke's estate could have effectively sued Ziebart, given the exclusive remedy provision of the Act, the insurers had had no duty to defend Ziebart at all, and certainly not on appeal.[3] Ziebart filed a motion for reconsideration. The district court denied that motion, reiterating that the insurers never had a duty to defend Ziebart. Ziebart then filed this appeal.

### C. The Michigan Court of Appeals Decisions.

While Ziebart's appeal was pending in this court, the Michigan Court of Appeals issued opinions in two cases bearing heavily on the instant case. In the first case, the court reversed the judgment based on the jury verdict against Ziebart. *LaDuke,* 535 N.W.2d at 203–04. The court held that (1) the record did not support the conclusion that Ziebart had actual knowledge of the fired employee's dangerous propensities, or of threats that he had made toward LaDuke, and (2) the fired employee's knowledge of his own violent tendencies could not be imputed to Ziebart. Thus, the court held, Ziebart had not committed an "intentional tort" that would, under the language of the Act, remove the LaDuke estate's claim from workers' compensation coverage.

In the second case, in which these parties were not involved, the court held that the Act's definition of an "intentional tort" does not entirely overlap with the language "bodily injury intentionally caused" in an insurance contract clause precisely identical to the one in the instant case. *Cavalier Mfg. v. Employers Ins.,* 211 Mich.App. 330, 535 N.W.2d 583, 585 (1995), *application for leave to appeal filed,* No. 103991 (Mich. Aug. 15, 1995). Thus, the court held, such a clause in a policy did not exclude from coverage a situation similar to the one alleged in the LaDuke estate's wrongful death complaint: where the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. *See id.* 535 N.W.2d at 589. Under *Cavalier,* an event could constitute an "intentional tort" for purposes of the Act, but that same event might not be a "bodily injury intentionally caused" under the exclusion provision of an insurance policy.

## II. ANALYSIS

■ We review a grant of summary judgment *de novo,* applying the same test the district court used. *E.g., City Management Corp. v. U.S. Chem. Co.,* 43 F.3d 244, 250 (6th Cir.1994). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also, e.g., City Management Corp.,* 43 F.3d at 250.

■ Michigan law provides that an insurer's duty to defend "depends upon the allegations of the complaint" against the insured, and that a defense must be provided if those allegations "*even arguably* come within the policy coverage." *Detroit Edison Co. v. Michigan Mut. Ins. Co.,* 102 Mich.App. 136, 301 N.W.2d 832, 835 (1980). Insurers also have a duty to "look behind" a complaint's allegations to analyze whether coverage is possible and, where doubt exists, to resolve that doubt in the insured's favor. *Id.*

■ With respect to appellate defense, Michigan cases have stated the general rule that an insured whose policy includes a "duty

---

**3.** The district court also determined that Ziebart was not entitled to indemnification for the judgment from the insurers. At oral argument, counsel for Ziebart advised the court that the parties have settled the underlying wrongful death litigation. Thus, only the question of the insurers' duty to represent Ziebart on appeal in the state courts remains before this court.

to defend" clause is entitled to a defense from its insurer at both the trial and the appellate levels, unless the insurance contract specifically provides otherwise. *Iacobelli Constr. Co. v. Western Casualty & Sur. Co.*, 130 Mich.App. 255, 343 N.W.2d 517, 521–22 (1983); *Palmer v. Pacific Indem. Co.*, 74 Mich.App. 259, 254 N.W.2d 52, 55 (1977). This is so because (1) insurance companies can limit their duties when they draft insurance contracts, (2) ambiguous language in insurance contracts is construed against the drafting insurance company, and (3) an insured could reasonably expect the insurance company to appeal an adverse judgment. *Iacobelli*, 343 N.W.2d at 521–22; *Palmer*, 254 N.W.2d at 55.

The insurers would distinguish both *Iacobelli* and *Palmer*, however, on the grounds that the insurers in those cases had a clear duty to defend from the outset of the case. In *Iacobelli*, the complaint alleged that the insured committed two trespasses, one intentional and one casual. *Iacobelli*, 343 N.W.2d at 521. In *Palmer*, the insured had been sued for malpractice. *Palmer*, 254 N.W.2d at 54.

In the instant case, the insurers argue that they *never* had a duty to defend the wrongful death complaint against Ziebart, because the complaint spoke only in terms of what the compensation Act defines as an intentional tort. Thus, the insurers' argument continues, they had no duty to continue their defense on appeal, once the jury expressly found Ziebart guilty of an intentional tort. The court below agreed with this argument twice: when it granted the insurers' motion for summary judgment, and again when it denied Ziebart's motion for reconsideration.

We disagree on two grounds. First, an insurer dutifully considering the allegations of the LaDuke estate's complaint in the wrongful death case could find (and the insurers here, since they defended Ziebart at trial, evidently did find) that the complaint presented allegations which could "arguably" come within the insurance coverage Ziebart purchased. The ultimate holding of the Michigan Court of Appeals in the wrongful death litigation firmly bolsters this position.

Second, it is now the law in Michigan that an insurance policy exclusion identical to the one at issue in this case does not exclude from coverage a situation where the employer allegedly has actual knowledge that an injury is certain to occur and willfully disregards that knowledge. *Cavalier Mfg.*, 535 N.W.2d at 589. Since that is the kind of act Ziebart was alleged to have committed, the insurers had a duty to defend Ziebart from the outset, as well as on appeal. An examination of the *Cavalier* court's reasoning demonstrates why this is so.

According to the *Cavalier* court, the compensation Act's definition of "intentional tort" recognizes two distinct kinds of intentional torts: (1) the "true intentional tort," in which an employer "specifically intended an injury," and (2) a tort in which "the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." *Id.* 535 N.W.2d at 586 (quoting Mich. Comp.Laws § 418.131(1)). The court noted, with regard to the latter type of tort, that "[s]ince intent is not required, the denomination 'intentional tort' is something of a misnomer." *Id.*

The insurance policy in *Cavalier* contained a clause denying coverage for "bodily injury intentionally caused or aggravated by [the employer]." *Cavalier*, 535 N.W.2d at 586. The policy in the instant case contains an identical clause. The *Cavalier* court reasoned that such exclusionary language went only to the "true intentional torts" set forth in the Act, and thus it held that such clauses do not exclude from coverage the second type of "intentional tort," where an employee willfully disregards actual knowledge that an injury is certain to occur. *See id.* 535 N.W.2d at 589. The court further held that such insurance policy language requires, as Michigan law has always required for proof of an employer's intentional tort in this context, "both an intentional act and an intentionally caused resulting injury" before the insurer is relieved of its duty to defend or indemnify. *Id.* (citations omitted).

The *Cavalier* court further noted that this conclusion squared with the doctrine of "reasonable expectation," a rule of construction in

insurance contracts. The court reasoned that Michigan businesses, aware of their duties under the Act, could reasonably expect their workers' disability insurance policies to cover them for acts that amount to "mere recklessness." *Id.* Construing the exclusionary clause against the insurer, the *Cavalier* court stated that the clause did "not clearly suggest that such statutory intentional torts are outside the ambit of coverage afforded by the policy." *Id.* Thus, the court concluded, an employee's injury could be the result of what the Act defines as an intentional tort, and thus it would not be covered by workers' compensation, and yet that same injury could also result from an act *outside* an insurance policy's exclusionary clause, in which case the insurer would have a duty to defend. As a result:

> [r]egardless of the egregious nature of the insured's actions, the liability policy would afford coverage provided that the insured did not act by design to cause specific injuries, assuming that the injured party is able to demonstrate that the insured had actual knowledge that the party would, in fact, be so injured.

*Id.* (citation omitted).

Under *Cavalier*, the insurers had a duty to defend Ziebart against the LaDuke estate's wrongful death lawsuit from the outset, and that duty existed both at trial and on appeal. It cannot be argued that Ziebart, in firing Zielin, specifically intended to cause LaDuke's death.[4] Rather, the LaDuke estate framed its complaint solely in terms of what the *Cavalier* court deemed the second type of intentional tort recognized under the Act. That type of tort is not "intentional" at all and, thus, it is beyond the scope of the insurance policy's intentional tort exclusion.

The insurers anticipate this result and make two arguments in response. First, they contend that they properly denied coverage because the LaDuke estate's claim in the wrongful death action did not allege an "accident," and the policy covered only injuries resulting from accident and disease. Second, they argue that we should not rely on the *Cavalier* holding because it is an intermediate appellate court ruling and thus does not bind this court.

The first argument, which is similar to the argument that the insurers never had a duty to defend Ziebart because the LaDuke estate's complaint alleged only an intentional tort, has no merit. As noted above, insurers have a duty under Michigan law to look behind a complaint's allegations in analyzing whether coverage is possible, and to resolve doubts about coverage in the insured's favor. *Detroit Edison Co.*, 301 N.W.2d at 835. Michigan law determines whether an "accident" has occurred from the standpoint of the *insured*, and it defines "accident" as "an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." *Arco Indus. v. American Motorists Ins. Co.*, 448 Mich. 395, 531 N.W.2d 168, 173 (1995) (quoting *Metropolitan Property & Liab. Ins. Co. v. DiCicco*, 432 Mich. 656, 443 N.W.2d 734, 741 (1989) and *Auto Club Group Ins. Co. v. Marzonie*, 447 Mich. 624, 527 N.W.2d 760, 763 (1994)). The estate's complaint alleges that Ziebart acted deliberately in ordering LaDuke to fire Zielin, with a willful disregard of actual knowledge that injury was substantially certain to occur to LaDuke. As heretofore indicated, however, an insurer dutifully looking behind those allegations could have seen (and, apparently, did see) that what happened could be deemed an "accident" from Ziebart's standpoint. As far as Ziebart was concerned, Zielin's murderous reaction to his dismissal was certainly "not anticipated," and rather was "an undesigned contingency" of the decision to fire him.

The insurers' second argument—that we cannot rely upon *Cavalier* because it is an intermediate appellate court decision— is also unavailing. This court has stated that such a decision, while lacking the controlling force of a decision of a state court of last resort, does serve as "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court

---

4. As the *Cavalier* court noted, "It is the rare case where an employer specifically intends a specific physical injury." *Cavalier*, 535 N.W.2d at 588 n. 6.

of the state would decide otherwise." *FL Aerospace v. Aetna Casualty & Sur. Co.,* 897 F.2d 214, 218–19 (6th Cir.) (quoting *Woodruff v. Tomlin,* 616 F.2d 924, 929 (6th Cir.), *cert. denied,* 449 U.S. 888, 101 S.Ct. 246, 66 L.Ed.2d 114 (1980)), *cert. denied,* 498 U.S. 911, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990). We may refuse to follow intermediate appellate court decisions where we are persuaded that they fail to reflect state law correctly, but we "should not reject a state rule just because it was not announced by the highest court of the state," even if we believe that the rule is "unsound." *Id.* at 219.

We are not persuaded that the rule announced in *Cavalier* incorrectly reflects Michigan law. Michigan has long held that, for an employer's intentional tort to relieve an insurer of a duty to defend, the employer must have intended both the act *and* the resulting injury. *E.g., Morrill v. Gallagher,* 370 Mich. 578, 122 N.W.2d 687, 691 (1963); *see* Mich.Comp.Laws Ann. § 418.131(1) (West Supp.1995). The definition of "intentional tort" in the Act can be read to include both torts that are truly "intentional" and torts which result from willfully disregarding actual knowledge that an injury is certain to occur. In the latter situation, neither the act nor the resulting injury is truly "intended" by the employer. Moreover, employers know they are liable to their employees for "true intentional torts," but employers may reasonably expect their insurance policies to cover them in the absence of such an animating intent. Thus, it is reasonable to conclude, as the *Cavalier* court did, that the Act's definition of "intentional tort" and the language "bodily injury intentionally caused" in an insurance policy do not entirely overlap, and that insurers must defend employers in cases like the instant case despite the presence of an intentional tort exclusion clause like the one before us.

### III. CONCLUSION

 Because the insurers breached their duty to defend Ziebart on appeal, we REVERSE the district court and REMAND this case for further proceedings consistent with this opinion. Under Michigan law, the

insurers are liable for the consequential damages of their breach, and those damages include the cost of Ziebart's appeal of the judgment based on the wrongful death verdict in the Michigan state courts, as well as reasonable attorney's fees. *Iacobelli,* 343 N.W.2d at 522; *Palmer,* 254 N.W.2d at 55. Thus, we direct the district court on remand to calculate those damages and enter an order granting them to Ziebart.[5]

5. Ziebart does not seek attorney's fees or costs arising out of the prosecution of its federal suit.