**DETREX CHEMICAL INDUSTRIES, INC., Plaintiff,**

v.

**EMPLOYERS INSURANCE OF WAUSAU, A Mutual Company, Defendant.**

**No. C85–2278Y.**

United States District Court, N.D. Ohio, E.D.

April 12, 1990.

Jerold Oshinsky, Leon B. Kellner, Robert H. Shulman, Karen L. Bush, Anderson, Kill, Olick & Oshinsky, Washington, D.C., for plaintiff.

Thomas A. Dugan, Ulmer, Berne, Laronge, Glickman & Curtis, Cleveland, Ohio, for third-party defendant Intern. Ins. Co.

Thomas Schick, McNeal, Schick, Archibald & Biro, L.P.A., Cleveland, Ohio, for third-party defendant Hartford Accident & Indem. Co.

Curtiss L. Isler, Arter & Hadden, Cleveland, Ohio, for defendant Employers Ins. of Wausau.

## MEMORANDUM AND ORDER

WILLIAM K. THOMAS, Senior Judge.

Plaintiff Detrex Corporation moves for the reconsideration of several of the court's earlier rulings (August 27, 1987 Memorandum and Order, 681 F.Supp. 438, as modified by February 8, 1988 Memorandum and Order), as well as raising other issues. Defendant Wausau (Employers Insurance of Wausau) does not dispute that under Ohio choice of law rules, Michigan law should apply. Defendant Wausau notes, with disapproval, that plaintiff's reconsid-

eration requests are made without a formal filing of a motion for reconsideration; and, as to its other requests, plaintiff fails to move for partial summary judgment.

Additionally, defendant Wausau moves for summary judgment dismissing claims for defense and indemnity and alternatively for reconsideration of this court's modifying Order of February 8, 1988.

As plaintiff states, this court made "a [Wisconsin] choice of law determination," in its August, 1987 Order, *"sua sponte,* based on the limited record before it. 681 F.Supp. at 455–56." The parties now agree that Michigan law applies. Therefore, the court will endeavor to ascertain and apply Michigan law when it is essential to apply state law to construe disputed policy provisions.

Before turning to plaintiff Detrex's request that this court reconsider its construction of the comprehensive general liability policies' duty to defend provisions, the court takes up the rules of insurance policy interpretation stressed by plaintiff Detrex.

### I.

As the Michigan authority on interpretation of insurance policies plaintiff Detrex cites *Powers v. Detroit Auto. InterInsurance Exchange,* 427 Mich. 602, 398 N.W.2d 411 (1986). In construing "the so-called owned automobile exclusion," the *Powers* court was "guided" by six "rules found" in Michigan "case law." The second quoted rule states:

(2) An insurer may not "escape liability by taking advantage of an ambiguity...." *Hooper [v. State Mutual Life Assurance Co.,* 318 Mich. 384, 393,] 28 N.W.2d 331 (1947). "'[W]herever there are two constructions that can be placed upon the policy, the construction most favorable to the policyholder will be adopted.'" *Deland [v. Fidelity Healty & Accident Mutual Ins. Co.,* 325 Mich. 9, 18], 37 N.W.2d 693 (1949).

*Id.* 398 N.W.2d at 420. This quoted rule generally supports plaintiff's statement:

Universal rules of insurance policy construction require (i) that any ambiguity in policies Wausau sold to Detrex be construed against Wausau. . . .

Detrex's Opening Brief at 13 (footnote omitted). But even more directly than *Powers*, *Wozniak v. John Hancock Mutual Life Insurance Co.*, 288 Mich. 612, 615, 286 N.W. 99 (1939) holds that where the language of an insurance policy is ambiguous, such ambiguity should be resolved in favor of the insured.

Of equal authority, *Kingsley v. American Central Life Insurance Co.*, 259 Mich. 53, 55, 242 N.W. 836 (1932) holds "When the language of a provision in [an insurance] policy is plain and easily understood, it must be construed as written therein." *Id.*, 242 N.W. at 836 (citing *Eynon v. Continental Life Ins. Co.*, 252 Mich. 279, 233 N.W. 228).[1] This *Kingsley* holding is still recognized and followed by the Michigan Supreme Court, *See Matich v. Modern Research Corp.*, 430 Mich. 1, 420 N.W.2d 67 (1988).

## II.

### A.

■ In urging this court to "apply its duty-to-defend decision to all of the environmental actions," Detrex refers the court to the recent decision in *Higgins Industries, Inc. v. Firemen's Fund Ins. Co.*, 730 F.Supp. 774 (E.D.Mich.1989). Summarizing the decision, plaintiff observes that "the court rejected the argument that the duty to defend arises only at the commencement of a traditional judicial action."

*Higgins*, using degreaser solvents in its manufacture of copper and brass tubing, for 30 years, had been issued a permit from the Michigan Department of Natural Resources (MDNR) to discharge waste water conditioned on limiting the contaminant lev-el. In 1985, MDNR ordered Higgins to investigate and test; and Higgins hired a consulting service. Higgins notified its insurance carriers of these events. On May 2, 1986 MDNR issued a notice of noncompliance, ordering Higgins to cease the unpermitted discharge, stating that failure to comply "will result in further enforcement action." On May 9, 1986, Higgins notified its insurance carriers of the MDNR "demand letter," as characterized by the *Higgins* court.

Higgins filed a declaratory action in the United States District Court for the Eastern District of Michigan, Southern Division at Flint to determine the parties' rights and obligations pursuant to various comprehensive general liability insurance policies. Judge Newblatt found for the plaintiff insured, "holding that insurance companies must defend governmental claims and demands in the environmental context, irrespective of whether those claims are couched in demand letters, administrative procedures, or in formal suits, until it is factually established that the policies do not apply." *Ibid.*

The *Higgins* court noted that since the Michigan Supreme Court has not decided the issues, "it falls to this Court to ascertain what [the Michigan Supreme Court] would do if so called." *Ibid.* Observing that the Michigan Court of Appeals "has split," Judge Newblatt "prefer[red] the result" in *United States Aviex Co. v. Travelers Insurance Co.*, 125 Mich.App. 579, 336 N.W.2d 838 (1983) and *Jonesville Products, Inc. v. Transamerica Insurance Group*, 156 Mich.App. 508, 402 N.W.2d 46 (1986). He found "not persuasive" *City of Evart v. Home Insurance Co.*, No. 103621, (Mich.App. April 10, 1989) and *Jones v. Farm Bureau Mutual Ins. Co.*, 172 Mich. App. 24, 431 N.W.2d 242 (1988). The court

---

1. Similar in substance and effect, *United States Fidelity & Guaranty Co. v. Guenther*, 281 U.S. 34, 50 S.Ct. 165, 74 L.Ed. 683 (1930) holds:

"[C]ontracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary and popular sense."

*Id.* at 37, 50 S.Ct. at 166 (quoting *Imperial Fire Ins. Co. v. Coos County*, 151 U.S. 452, 462, 14 S.Ct. 379, 381, 38 L.Ed. 231). This court was "mindful" of this rule in construing the Wausau policy provisions, *Detrex Chemical Industries, Inc. v. Employers Insurance of Wausau, et al.*, 681 F.Supp. 438, 442 (N.D.Ohio 1987).

noted that *City of Evart* "limited the events triggering insurance coverage to traditional litigation only, for the sole stated reason that the word 'suit' is plain and unambiguous." *Higgins, supra.*

The *Higgins* court does not analyze the policy language to determine whether the word "suit," as used in the duty to defend clause, is "plain and unambiguous." Rather, the *Higgins* court goes on to state that it is in "accord" with Judge Feikens

> who noted in [*Fireman's Fund Insurance Companies v.*] *Ex–Cell–O (I)*, 662 F.Supp. [71] at 75, that "coverage [should] not hinge on the form of action or the nature of the relief sought, but on an actual or threatened use of legal process to coerce payment or conduct by a policyholder." [2]

*Higgins, supra* (brackets in original). This court notes that in connection with environmental proceedings three federal district courts in Michigan have now construed the duty to defend clause and the word "suit" in comprehensive general liability policies as this court has done in this case. Thus, in *Harter v. Home Indem. Co.*, 713 F.Supp. 231 (W.D.Mich.1989), the court notes:

> Harter argues that the EPA's designation of Harter as a potentially responsible party ("PRP") triggers defendants' duty to defend under the respective insurance policies. According to the insurance policies, defendants have a "duty to defend any suit against the insured seeking damages." Harter contends that the EPA's "PRP" letter is the equivalent of a suit seeking damages.

*Id.* at 232. The court determined that it "cannot construe the EPA's threat to hold Harter liable for clean up costs as a suit seeking damages without doing violence to the plain and ordinary meaning of the word 'suit.' *See Detrex Chemical Industries v. Employers Insurance of Wausau*, 681 F.Supp. 438 (N.D.Ohio 1987). *But see Fireman's Fund Insurance Co. v. Ex–Cell–O Corp.*, 662 F.Supp. 71 (E.D.Mich. 1987) ('PRP' letter is a 'suit' for purposes

of an insurer's duty to defend)." *Harter*, 713 F.Supp. at 232–33.

Judge Gibson concluded

> Harter has not demonstrated any ambiguity in the word "suit," and the Court finds none. Accordingly, the term "suit" will be construed according to its plain meaning. The Court finds that a "suit" in this context plainly means some type of court proceeding. It is undisputed that a "PRP" letter is not a court proceeding. Accordingly, defendants have no duty to defend at this point.

*Harter*, 713 F.Supp. at 233 (footnote omitted).

In another Western District of Michigan decision, *Arco Industries Corp. v. The Travelers Ins. Co., et al.*, 730 F.Supp. 59 (W.D.Mich.1989), the court granted defendants' motions for summary judgment. One of the issues was raised by defendants' contention that the EPA's "PRP letter does not trigger [the insurers'] duty to defend because they are only obligated to defend Arco against 'suits', and the PRP letter is not a suit." *Arco, supra.*

After thoroughly examining the question, pertinent Michigan Court of Appeals decisions, United States District Court decisions, and other pertinent court decisions, Judge Enslen ruled

> Although I acknowledge that some disagreement exists on this issue, and although I agree with Arco that its most prudent course of action is to participate in the EPA's investigation and remedial study, I feel constrained to hold that the PRP letter issued to Arco is not a 'suit' within the meaning of the insurance policies and that it did not trigger the insurers' duty to defend Arco against the EPA. First, the weight of authority, including a decision from this district, favors the insurers' position. *See Harter Corp. v. Home Indemnity Co.*, No. K88–154CA slip op. [713 F.Supp. 231] (W.D. Mich. April 23, 1989). Second, the only Michigan court to consider the precise issue presented here has agreed with the insurers' position, albeit in an unpub-

2. Judge Feikens, citing *Ex–Cell–O Corp.*, reached the same decision in *Ray Industries, Inc. v. Liberty Mutual Insurance Co.*, 728 F.Supp. 1310 (E.D.Mich.1989).

lished opinion. *See, City of Evart v. Home Ins. Co.*, No. 103621 (Mich.App. April 10, 1989). Third, the insurers' position most closely corresponds with the plain meaning of the "suit." That term is generally used to refer to formal legal proceedings, such as the initiation of civil litigation, and not to informal actions by administrative agencies. In short, I simply cannot find that the term is ambiguous in this context.

*Arco, supra.*[3]

A month after *Higgins* was decided, another judge of the Eastern District of Michigan, Judge Bernard A. Friedman, decided yet another "duty to defend" case, *Central Quality Services Corp. v. INA*, No. 87–CV–75573–DT (E.D.Mich. Sept. 6, 1989). The court noted that the issue it "must resolve is whether the word 'suit' is ambiguous or unambiguous and what meaning the term [undefined in the policies] has in relationship to the EPA PRP letter." *Ibid.* The court noted that under *Raska v. Farm Bureau Mutual Insurance Co.*, 412 Mich. 355, 362, 314 N.W.2d 440 (1982):

> If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand that there is no coverage under the same circumstances the contract is ambiguous and should be construed against its drafter and in favor of coverage.

*Central Quality Services Corp., supra* (citing *Raska*, 412 Mich. at 362, 314 N.W.2d 440).

Having cited the teaching of *Raska*, Judge Friedman notes that "Michigan courts have reached different conclusions as to whether EPA PRP letters constitute suits which insurers have a duty to defend." The court then examines the analysis of Judge Feikens in *Fireman's Fund Insurance Co. v. Ex–Cell–O Corp., supra,* and the "departure which *Ex–Cell–O* had

actually made from *Detroit Edison* and *United States Aviex."* *Central Quality Services Corp., supra.* Judge Friedman finds the

> reasoning in *Harter* to be the more persuasive. This Court finds that the word "suit" is not ambiguous for the reasons presented in *Harter.* The Court also finds that the approach taken by *Harter* gives full consideration to the language of the insurance contacts [sic] and construes the duty to defend in accordance with well-established principles of Michigan law. Further, *Harter* explains fully why the holding in *Ex–Cell–O* is actually out of line with *Detroit Edison* and *United States Aviex.*

*Central Quality Services Corp., supra.* The court adds that *City of Evart v. Home Insurance Co.*, No. 103621, slip op. (Mich. Ct.App. April 19, 1989) "also demonstrates that the *Harter* Court reached the correct conclusions." *Ibid.* Thereafter, the court determines:

> Based upon *Harter* and *City of Evart,* the court holds that the EPA PRP letter did not constitute a "suit." [Footnote omitted.]

*Central Quality Services Corp., supra.*

Detrex brings to the Court's attention *Polkow v. Citizens Insurance Company of America*, 447 N.W.2d 853 (Mich.App.1989). In a declaratory action, involving in part an interpretation of the duty to defend provision of an insurance policy, "The circuit court required defendant to provide reimbursement for the costs expended by plaintiff in conducting an investigation into possible ground water contamination at the prompting of the Department of Natural Resources and the United States Environmental Protection Agency." *Id.* at 854. The circuit court determined that defendant "was required to defend and to afford coverage under the terms of its comprehensive general liability policy issued to plaintiff." *Ibid.* The court of appeals affirmed.

---

**3.** In his opinion in *Higgins,* Judge Newblatt quotes from *Avondale Industries, Inc. v. The Travelers Indemnity Company,* 697 F.Supp. 1314 (S.D.N.Y.1988), language that in turn quotes from *United States Fidelity and Guaranty Co. v. Thomas Solvent Co.,* 683 F.Supp. 1139, at 1168.

Significantly, the duty to defend, enforced in *Thomas Solvent,* related to suits already brought against *Thomas Solvent.* Judge Enslen, in *Arco,* did not attempt to distinguish *Thomas Solvent;* it is evident that he did not believe the two decisions to be incompatible.

The court of appeals quoted in support *United States Aviex Co. v. Travelers Ins. Co.*, 125 Mich.App. 579, 336 N.W.2d 838 (1983). Referring to quoted *Aviex* language ["the damage to the natural resources is simply measured in the cost to restore the water to its original state." *Aviex*, 125 Mich.App. at 589–90, 336 N.W.2d 838], the Michigan Court of Appeals declares

Analysis if the policy terms "suit" and "damages" are not dissimilar: damages are traditionally a remedy associated with a lawsuit brought in a court of law. Given the reasoning in *Aviex*, viewed against the backdrop of the nearly identical policy terms, inferring that the *Aviex* panel would not find the absence of a complaint filed in a court of law to preclude coverage seems a logical, if not obvious, extension of its precise holding. [Footnote omitted.]

Our reading of *Aviex* is in keeping with *Fireman's Fund Ins. Companies v. Ex–Cell–O Corp.*, 662 F.Supp. 71, 75 (E.D.Mich.1987), where, in reliance on the *Aviex* decision, it was held that 'a suit' includes any effort to impose on the policyholders a liability ultimately enforceable by a court, and that 'damages' include money spent to clean up environmental contamination." Cf. *Detrex Chemical Industries, Inc. v. Employers Ins. of Wausau*, 681 F.Supp. 438, 452–455 (N.D.Ohio 1987) (DNR letter constituted a "suit" because it invoked a statutory right to an adjudicatory hearing subject to administrative review).

*Polkow*, 447 N.W.2d at 855.

The *Polkow* court acknowledges that it fashions what seems to it an "obvious extension of [the *Aviex*] precise holding." The court makes this "extension," although neither *Aviex* nor *Polkow* makes any attempt to distinguish or reconcile the *Kingsley* holding, *supra*, that "[w]hen the language of a provision [in an insurance policy] is plain and easily understood [here, the word "suit"], it must be construed as written therein." The principal justification of the court of appeals is to say that, "Our reading of *Aviex* is in keeping with *Fireman's Fund Ins. Companies v. Ex–Cell–O*

*Corp.* ..." *Polkow*, 447 N.W.2d at 855. However, the court of appeals fails to recognize or note the three recent decisions of Michigan United States District Courts', i.e., *Harter, Arco Corp.* and *Central Quality Services Corp.*, each of which refuses to follow *Ex–Cell–O. Polkow* also cites *Detrex*, 681 F.Supp. 438, 452–455, as it relates to this court's ruling regarding the Gold Shield Solvents site. Yet, *Polkow* does not refer to the principal part of the *Detrex* Memorandum and Order which declined to accept *Polkow's* quoted analysis of *Ex–Cell–O Corp.*

These three rulings, *Harter, Arco Corp.* and *Central Quality Services*, have held that "an EPA PRP letter does not constitute a 'suit.'" These rulings convince this court that its decision of August 27, 1987, as modified on February 8, 1988, correctly construes the insurer's duty to defend provisions, including the word "suit." This court's prior ruling is consistent with pertinent Michigan case law. Hence, this court overrules Detrex's motion for reconsideration of this court's duty to defend ruling.

## II.

### B.

█ In the event the court refuses to grant Wausau's motion for summary judgment, dismissing Detrex's claims (denied *infra*), Wausau asks this court to reconsider its holding that Wausau "has a duty to 'defend' Detrex in connection with Detrex's Gold Shield plantsite because Detrex had received notice from the MDNR [Michigan Department of Natural Resources] that it had violated Michigan Law by allowing chemical solvents to pollute the environment at the site." Wausau's October 24, 1989 Reply Brief at 23.

This generalized description of the court's Gold Shield Solvent ruling is incomplete and needs fleshing out. MDNR wrote to Detrex informing it "that its Grand Rapids facility [Gold Shield Solvent] was in violation of a Michigan Law prohibiting 'the discharge of any substance which is or may become injurious to the waters of this state.'" *Detrex*, 681 F.Supp. at 453.

*City of Evart v. Home Insurance Co.,* *supra,* on which Wausau relies, determined only that "the term 'suit' as used in the policies is clear and unambiguous and, given its plain and ordinary meaning, does not encompass the notice letter sent to plaintiff by the Department of Natural Resources." *Ibid.* This court, in *Detrex,* goes further. It holds

> The term "suit" includes its functional equivalent, the commencement of an action before an administrative agency acting in a judicial capacity. *See Solo Cup v. Federal Insurance Co.,* 619 F.2d 1178, 1188, n. 7 (7th Cir.1980).

*Detrex,* 681 F.Supp. at 454. This court then determined DNR is "an administrative body acting in a judicial capacity."

> An administrative board acts in a judicial capacity when it hears evidence and witnesses, the parties are given an opportunity to brief and argue their versions of the facts and present arguments, and the parties are given an opportunity to seek court review of any adverse findings. *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986).

> Because the hearings provided for by the DNR are ones which meet the description of an adjudicatory hearing, the DNR when issuing an "order" can be said to be an administrative body acting in a judicial capacity.

*Detrex,* 681 F.Supp. at 454. Upon the foregoing review, the court reaffirms its *Gold Shield Solvent* ruling, and it, therefore, overrules Wausau's motion to reconsider such ruling.

■ Relatedly, Wausau asks this court to reconsider its modifying decision of February 8, 1988 "that Wausau would have a duty to 'defend' Detrex if the EPA were to issue a remedial order under Sections 104 or 106 of CERCLA to Detrex in any of the other subject environmental matters. 681 F.Supp. at 454–55, 460." Wausau's October 24, 1989 Reply Brief at 23. On Motion for Partial Reconsideration, this court previously held

Accordingly, it is concluded that in the *Fields Brook* environmental matter, and in any of the other environmental matters, Wausau's "duty to defend" would be triggered "at the administrative level," should the United States Environmental Protection Agency issue a remedial order to Detrex pursuant to Section 9604 or 9606 of CERCLA.

*Detrex,* 681 F.Supp. at 460. This court then recognized

> This modification of the Memorandum and Order is consistent with this Court's ruling in the Gold Shield Site environmental matter, III B(1) of this Court's Memorandum and Order.

*Ibid.* On reconsideration, these holdings are still found to be consistent. Both Gold Shield and Fields Brook involve an order of an administrative body at the "administrative level." The distinction between an EPA letter seeking voluntary participation in a clean-up and an "adversarial" action by the EPA (e.g., an administrative order) is articulated by the Second Circuit in *Avondale Industries, Inc. v. Travelers Indemnity Co.,* 887 F.2d 1200 (2d Cir.1989),

> Although the Appellate Division in *Technicon Electronics Corp. v. American Home Assurance Co.* held that the EPA administrative letter demand in that case was not a suit, 141 A.D.2d [124] at 145–46 [533 N.Y.S.2d 91 (N.Y.A.D.1988), the Court of Appeals did not reach or decide the issue, 74 N.Y.2d [66] at 76, 544 N.Y.S.2d 531, 542 N.E.2d 1048. Again, *Technicon* is distinguishable on this issue too. There, in the Appellate Division's own words, "[t]he EPA letter ... merely informed Technicon of its potential liability under CERCLA and that the EPA was interested in discussing Technicon's voluntary participation in remedial measures. The letter was an invitation to voluntary action...." 141 A.D.2d at 146 [533 N.Y.S.2d 91]. A request to participate voluntarily in remedial measures is not the same as the adversarial posture assumed in the coercive demand letter that Avondale received in the instant case.

*Id.* at 1206.[4] The court is still of the opinion that Wausau's duty to defend is trig-

4. *Cf. Ryan v. Royal Insurance Company,* 728 F.Supp. 862 (D.R.I.1990). *But see, C.D. Spangler*

gered by an environmental administrative body's issuance of a remedial order.

This court, therefore, affirms its February 8, 1988 modification of its Order of August 27, 1987. Wausau's motion for reconsideration of this ruling is overruled.

### III.

The court next turns to the so-called "pollution exclusion" contained in the post–1971 insurance policies issued by Wausau to Detrex. The exclusion itself reads

This insurance does not apply:

(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

This court held in its August 27, 1990 Memorandum and Order that "the phrase 'sudden and accidental' does not include injuries incurred over a period of time." *Detrex,* 681 F.Supp. at 457. The court's previous ruling on this point rested on the application of Wisconsin law. Because this court now recognizes, and the parties agree, that Michigan law controls the substantive issues in this case, the court will reconsider this holding applying Michigan law.

Plaintiff Detrex argues in its opening brief that "under the developing body of Michigan case law ... gradual pollution damage potentially is covered, so long as [Detrex] did not expect and intend to cause the damage." Detrex cites four Michigan Court of Appeals cases which it claims construe "sudden and accidental, as used in the exception to the exclusion, to mean 'unexpected and unintended'". Two of these cases are "reported cases," and two are not. The two reported cases are *Jones-*

*Construction Co. v. Industrial Crankshaft and Engineering Co.,* 326 N.C. 133, 388 S.E.2d 557 (1990), stating, "In summary, we hold that within the meaning of these policies ... (3) the

*ville Products, Inc. v. Transamerica Ins. Group,* 156 Mich.App. 508, 402 N.W.2d 46 (1986) and *Upjohn Co. v. New Hampshire Ins. Co.,* 178 Mich.App. 706, 444 N.W.2d 813 (1989). *Jonesville* makes no reference to the first sentence of the pollution exclusion provision of the plaintiff's comprehensive general liability policy, which specifies that the "insurance does not apply ... to ... property damage arising out of the discharge ... of ... toxic chemicals ... contaminants or pollutants into or upon the land...." Clearly, if the provision stopped there, insurance coverage is excluded. Recognition of that starting point, omitted by the *Jonesville* court, is essential to interpreting the remaining clause

... but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

*See* p. 1317, *supra* and *Jonesville,* 402 N.W.2d at 48. However, as to this clause, *Jonesville* simply states

The circuit court erred in finding that the allegation of "continuous" negligent discharge of waste onto Jonesville's property took Count 1 of the Lapes' complaint out of defendant's exception for "sudden and accidental" release. It is possible that the releases could have been sudden, i.e., unexpected, and accidental, i.e., unintended, and thus outside the exclusion.

*Jonesville,* 402 N.W.2d at 48. As a similar decision to *Jonesville, Detrex* cites *Upjohn Co. v. New Hampshire Ins. Co.,* 178 Mich. App. 706, 444 N.W.2d 813 (Mich.App.1989), in which Upjohn's insurers, *Granite* and *Alstate,* claimed that the pollution exclusions prevented coverage. *Upjohn* quotes and relies on *Jonesville,* but makes no independent analysis.

Both Allstate and Granite claim that the escape of the byproduct material was not sudden and accidental because it occurred over a three-week span. This Court has previously equated the word "sudden" as used in the pollution exclusion clause with the word "unexpected."

State's orders requiring cleanup of toxic wastes are 'suits' giving rise to the insurer's duty to defend."

*Jonesville Products, Inc. v. Transamerica Ins. Group,* 156 Mich.App. 508, 512, 402 N.W.2d 46 (1986), lv. den. 428 Mich. 897 (1987). Like the panel in *Jonesville Products, Inc.,* we believe that even a continuous discharge of chemicals may be both accidental (i.e., unintended) and sudden (i.e., unexpected) and, therefore, outside the pollution exclusion. *Id.*

*Upjohn,* 444 N.W.2d at 817.[5]

Defendant Wausau urges that this court's interpretation, under Wisconsin law, should be affirmed under Michigan law. In support, Wausau argues

Most courts applying Michigan law, as well as most state and federal courts nationwide, have upheld the pollution exclusion as written and interpreted the exclusion according to its plain terms to exclude all damages caused by pollution unless the discharge of pollutants was both sudden and accidental. These courts have upheld the term "sudden" as having its usual and ordinary temporal component and as being contrasted with "gradual."

Wausau's October 24, 1989 Reply Brief at 29 (footnote omitted).

Congruent with Wausau's statement of law, the Sixth Circuit, in *FL Aerospace v. Aetna,* 897 F.2d 214 (1990), has now so interpreted the pollution exclusion provision in light of Michigan law. In pertinent part, *FL Aerospace* holds:

We begin by stating the well-known rule that a federal court sitting in a diversity case must apply the state law that the state court in that state would apply. *Erie R.R. v. Tompkins,* 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] (1938). Furthermore, the federal court must apply a state's law in accordance with the controlling decisions of the highest court of that state. *Vandenbark v. Owens-Illinois Glass Co.,* 311 U.S. 538, 543 [61 S.Ct. 347, 350, 85 L.Ed. 327] (1941). Michigan law, therefore, controls in this

case, but the Michigan Supreme Court has never interpreted the policy provision at issue....

*FL Aerospace,* 897 F.2d 217–18. Continuing,

We think that the terms "sudden" and "accidental" are not ambiguous and should be given their plain, everyday meaning. We note that this finding is not at odds with the *Jonesville* decision to the extent that nothing in that opinion or in subsequent Michigan Court of Appeals decisions relying on it have indicated that the terms should be given anything other than their plain meaning. The dictionary definition of "sudden" is "happening, coming, made or done quickly, without warning or unexpectedly; abrupt." *American College Dictionary* 2284 (1961). The term "accidental" means "happening by chance" or "unintentional" or "fortuitous." *American College Dictionary 8; Webster's Third New Int'l Dictionary 11.* These definitions comport with the common understanding of the terms as they are used in everyday parlance. A sudden and accidental event is one that happens quickly, without warning, and fortuitously or unintentionally.

*Id.* at 219 (footnote omitted). The Sixth Circuit then determined that the Michigan Supreme Court would "find, as we have found."

We recognize that our interpretation of the "sudden and accidental" exception departs from the Michigan Court of Appeals decision in *Jonesville* as well as from several subsequent Michigan Court of Appeals decisions; [footnote omitted] however we believe that the Michigan Supreme Court, following its own rules of insurance contract interpretation, would find, as we have found,[8] that the word "sudden" has a plain, everyday temporal component and would interpret

---

**5.** Detrex and Wausau have each provided the court with a copy of the Michigan Court of Appeals' decision of *Polkow v. Citizens Insurance Company of America,* 180 Mich.App. 651, 447 N.W.2d 853 (1989). With regard to the

insurer's Pollution Exclusion Exception, *Polkow* followed and adopted *Jonesville*'s ruling that "sudden" means "unexpected" and "accidental" means "unintended." As with *Upjohn,* Polkow adds nothing to the *Jonesville* cryptic ruling.

the "sudden and accidental" exception in light of that finding.

8 *See also Fireman's Fund Ins. Co. v. Ex-Cell-O Corp.*, 702 F.Supp. 1317, 1325 (E.D.Mich. 1988) ("*Ex-Cell-O II*") in which the district judge, applying Michigan law, reached the same conclusion that we reach here.

■ This court now applies and follows the definitive Sixth Circuit decision in *FL Aerospace v. Aetna*. As to the wording of the pollution exclusion exception, the Sixth Circuit first determined that the "terms 'sudden' and 'accidental' are not ambiguous and should be given their plain everyday meaning." *Id.* at 219. Accordingly, the parole evidence rule precludes consideration of the "drafting history" which Detrex contends "demonstrates that gradual pollution which was not expected and intended is covered." [6]

In applying the pollution exclusion exception to the several pending Detrex environmental matters, pursuant to *FL Aerospace*, this court must recognize, in the Sixth Circuit's words

A sudden and accidental event is one that happens quickly, without warning, and fortuitously or unintentionaly.

*Ibid.*

■ As to any insurance policy containing a pollution exclusion clause, and with reference to its "discharge, dispersal, release or escape," of any "toxic chemicals" or other "pollutants," Detrex will be required to prove that such "discharge, etc." was "sudden and accidental," in the sense that the "event is one that happens quickly, without warning, and fortuitously or unintentionally."

### III.

#### A.

Raising the next issue, Detrex claims that "[t]he continuous trigger is the applicable trigger of coverage." As was the case with this court's prior ruling regarding the pollution exclusion issue, the determination as to which "trigger of coverage" to apply was previously made by this court

**6.** In view of this ruling, this court declines to consider a 1966 letter "Re: Comprehensive Gen-

in accordance with Wisconsin law. *See Detrex*, 681 F.Supp. at 456. Because this court now determines that Michigan law applies, *see* p. 1311, *supra*, the trigger of coverage issue will be re-examined.

The standard language of the insurance policies involved in this case provides:

The company will pay on behalf of the insured the sums which the insured shall become legally obligated to pay as damages because of

Coverage A. Bodily injury or

Coverage B. Property Damage to which this insurance applies, caused by an occurrence....

"Occurrence" is defined in the 1967 to 1972 policies as

[A]n accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

Detrex, in its opening brief, asserts "[t]he continuous trigger is the applicable trigger of coverage,"

[T]he occurrence is the *cause* of the damage, and coverage is triggered by the *result* during the policy period, not the cause. Therefore, it is the resulting *damage* during the policy period that triggers coverage, regardless of the timing of the "occurrence," or cause, and continuous damage triggers multiple, successive policies. [Footnote omitted.]

Here, at least part of the continuing damage process alleged in the Environmental Actions took place during Wausau's policy periods. Thus, as a matter of law, coverage under Wausau's standard policy language has been triggered. Moreover, each triggered policy is liable for Detrex's entire liability in an Environmental Action, and Detrex may select, from among those triggered, the policy that will respond to a particular Environmental Action.

Plaintiff Detrex's Opening Brief at 41, 42 (emphasis in original). Wausau agrees with "Detrex's often repeated assertion that 'resulting *damage* during the policy period [ ] triggers coverage,' under Michi-

eral Liability Policy," allegedly written by Wausau to Johnson & Higgins, submitted by Detrex.

gan law. (Opening Brief at 44)." Wausau's October 24, 1989 Reply Brief at 44. But, Wausau's position is that "determination of whether *any* Wausau policy is 'triggered' must await proof of the relevant facts [at trial]." *Id.* at 45 (emphasis original). Wausau asserts that the burden of proof is on Detrex to show "that there was an 'occurrence' resulting in property damage during the policy period." Defendant Wausau emphasizes, "Detrex has so far failed to prove *any* property damage." Wausau repudiates the validity of the "continuous trigger theory," arguing that this theory has been adopted only in result-oriented "asbestos bodily injury coverage case[s]." Instead, defendant Wausau argues, "The facts to be proven, rather than any artificial 'trigger theory,' must determine which, if any, policies are triggered."

Neither party refers the court to any Michigan state court cases that have decided the trigger of coverage issue; and this court has found none. In *U.S. Fidelity and Guaranty Co. v. Thomas Solvent Co.*, 683 F.Supp. 1139, Judge Enslen held

> Although plaintiff has analyzed the duty to defend issue under at least four different theories which courts have currently fashioned concerning what constitutes an "occurrence," what is clear is that the common denominator of these decisions is that courts have consistently chosen and/or fashioned a theory to maximize coverage. There is no reason why some variation of the "continuous trigger" theory should not be seen as applicable here—at least at this juncture where the facts are quite complex and the issue of precisely when the so-called "continuous occurrences" should be "fixed" is so hotly disputed. Such a "hybrid" continuous trigger theory would clearly require all the insurers to defend where the date upon which the "continuous" damage first occurred has not been settled and/or where continuing exposure (damage) is also alleged. Under such a theory every policy in effect at any time during the (continuous) injury process—from the initial exposure(s) until the last manifest development of bodily injury or property damaged would be triggered for coverage.

*Id.* at 1163. Judge Enslen cites no Michigan case to support his application of the continuous trigger theory as to the duty to defend issue.

Without mentioning this *Thomas Solvent Co.* ruling, Chief Judge Churchill of the Eastern District of Michigan adopted the "injury in fact" approach to the trigger of coverage issue in *Dow Chemical Co. v. Associated Indemnity Corp.*, 724 F.Supp. 474 (E.D.Mich.1989), an insurance policy declaratory action growing out of property damage due to the use of Dow's Sarabond, a mortar additive. While recognizing that Michigan law applies, Chief Judge Churchill noted

> In fact, the defendants' reliance on [*Frankenmuth Mutual Ins. Co., Inc. v.*] *Eurich* [152 Mich.App. 683, 394 N.W.2d 70 (1986)], *Moss* [*v. Shelby Mutual Ins. Co.*, 105 Mich.App. 671, 308 N.W.2d 428 (1981)], and *Employers Mutual* [*Liability Ins. Co. v. Michigan Mutual Auto Ins. Co.*, 101 Mich.App. 697, 300 N.W.2d 682 (1980)] merely demonstrates that there are neither any controlling Michigan decisions nor any cases from other jurisdictions applying Michigan law to the sort of gradually deleterious process that resulted in the claims underlying this coverage case. The Court, therefore, cannot identify any source of Michigan law that undermines the "injury in fact" approach to the trigger issue.

*Dow Chemical*, 724 F.Supp. at 482. Going beyond Michigan law, Chief Judge Churchill summarizes the trigger issue cases, nationwide

> [1] If coverage is triggered at the time that personal injury or property damage becomes known to the victim or property owner, the approach is identified as the "manifestation theory." *See, e.g., Eagle-Picher Indus., Inc. v. Liberty Mutual Ins. Co.*, 523 F.Supp. 110, 118 (D.Mass.1981), *modified*, 682 F.2d 12 (1st Cir.1982). [2] If coverage is triggered when real personal injury or actual property damage first occurs, the approach is called the "injury in fact theory." *See, e.g., American Home Prods. Corp. v.*

*Liberty Mutual Ins. Co.*, 748 F.2d 760, 764–65 (2d Cir.1984). [3] If coverage is triggered when the first exposure to injury-causing conditions occurs, then the court is said to have chosen the "exposure theory." *See, e.g., Insurance Co. of North America v. Forty–Eight Insulations, Inc.*, 633 F.2d 1212, 1217, 1223 (6th Cir.1980), *clarified on reh'g*, 657 F.2d 814 (6th Cir.1981). [4] Finally, if coverage is triggered in a manner such that insurance policies in effect during different time periods *all* impose a duty to indemnify, then the approach is labelled a "continuous" or "multiple" trigger theory. *See, e.g., Keene Corp. v. Insurance Co. of North America*, 667 F.2d 1034, 1047 (D.C.Cir.1981).

*Dow Chemical*, 724 F.Supp. at 478–9. This court must decide which of these four triggers of coverage the Michigan Supreme Court is likely to adopt. Before discussing Chief Judge Churchill's choice of the "injury-in-fact" trigger of coverage, the court examines Detrex's contentions.

In pressing the continuous trigger theory (number four, above), Detrex urges that Wausau's policies are ambiguous with respect to coverage for the environmental actions

> because the policies "fail to articulate with any precision a point in the lengthy development [of a continuing injury] at which coverage is triggered." *Lac D'Amiante du Quebec, Ltd. v. American Home Assurance Co.*, 613 F.Supp. 1549, 1557 (D.N.J.1985), *vacated as to one insolvent defendant only*, 864 F.2d 1033 (3d Cir.1988) ("*Lac*") (footnote omitted).

Detrex's Opening Brief at 43 (brackets in original).[7] Lac D'Amiante ("Lac") is a Canadian company which faced a "great bulk" of asbestosis and other related disease claims and suits by persons who claimed exposure to LAQ's asbestos and delayed manifestation of injury. Lac sued its insurers for a declaration of rights under its comprehensive general liability policies.

The Lac court found that in asbestos litigation the occurrence clause of the policy is ambiguous. The court reasoned

> As applied in the insidious disease context, these provisions are ambiguous in that they fail to articulate with any precision a point in the lengthy development of an insidious disease at which coverage is triggered.

*Lac D'Amiante du Quebec v. American Home Assurance*, 613 F.Supp. 1549, 1557 (D.C.N.J.1985). "More precisely" the court stated

> [W]hile the language of the policies indicates no intention to exclude from coverage diseases with long gestation periods, neither does that language state whether it is exposure, exposure in residence, manifestation or all three which trigger coverage.

*Id.* at 1557–58. The court then concluded

> Given the stipulated and otherwise undisputed relevant facts in this action most particularly the proposition that bodily or "personal injury" in the policies includes any pathological changes to the human organism, including internal, nonobservable tissue damage and includes subclinical insult to lung tissue

**7.** Plaintiff's summary of the Third Circuit "vacation and remand" is misleading. The district court made a liability determination and fixed the amount of damages with respect to the defendant insurers, including Midland Insurance Company, notwithstanding that a New York court, pursuant to New York's Uniform Insurers Liquidation Act, had ordered Midland into liquidation proceedings. Midland moved to dismiss or stay the action on the ground that the federal court should abstain in favor of New York liquidation proceedings. The district court denied the motion, and Midland appealed. The court of appeals determined that the district court should have abstained under the doctrine of *Buford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

Perusal of the Third Circuit's opinion shows that the "continuous trigger" issue, the subject of the district court's reported decision, played no part in the appeal. The Footnote court of appeals makes this clear

> The district court resolved a number of complex contractual issues, including the highly controversial and unsettled question whether exposure, manifestation or some combination thereof is the triggering event for insurance coverage.

*Lac D'Amiante du Quebec v. American Home Assurance Co.*, 864 F.2d 1033, 1034 (3rd Cir.1988).

which can result shortly after inhalation; given the basic principles of contract and insurance law which apply; and given the fact that no New Jersey court has yet to decide which operative event constitutes an asbestos-related injury, this court predicts that were this case before the Supreme Court of New Jersey for decision, the Supreme Court would construe these ambiguous policies in favor of the insured and, following *Keene [Corp. v. Ins. Co. of North America, supra]*, declare that exposure, exposure in residence, and manifestation each trigger coverage under the policies.

*Id.* at 1557 (footnotes omitted). Later in its opinion the *Lac* court declared

> [W]hile property damage is not, of course an insidious disease, many of the same considerations apply. Those considerations lead to the conclusion that property damage in the asbestos context is as imprecise of definition as is "bodily injury", a term which the Third Circuit observed "simply lack[s] the precision necessary to identify a point when physical damage or debility occurred so as to determine adequately at what time coverage was triggered." *ACandS, Inc. v. Aetna Casualty and Surety Co.*, 576 F.Supp. 936 at 972.

*Id.* at 1561.

To justify its claim that the Wausau policies "occurrence" clause is ambiguous, Detrex's brief substitutes, the words "of a continuing injury" for the words "of an insidious disease." Thus it contends

> Wausau's policies are ambiguous with respect to coverage for the Environmental Actions, because the policies "fail to articulate with any precision a point in the lengthy development [of a continuing injury] at which coverage is triggered." *Lac D'Amiante du Quebec, Ltd. v. American Home Assurance Co.*, 613 F.Supp. 1549, 1557 (D.N.J.1985)....

Detrex's Opening Brief at 43 (brackets in original). Apparently in support, Detrex asserts that "continuous damage triggers multiple, successive policies." However, so far in this litigation Detrex has not placed any facts on the record to support such claims. As to any of the subject sites, it has not yet shown a "continuous injury," or continuous "property damage" that was caused or occurred during any of the several Wausau policy periods. When, as, and if, Detrex produces facts to show that at any of the subject sites "property damage" due to pollution has occurred, comparable to the asbestos caused "property damage" discussed in *Lac*, Detrex can then contend that *Lac* should apply and govern the trigger of coverage issue. This court could then determine whether or not such extrinsic evidence should be considered to establish the claim of ambiguity regarding the "occurrence" clause and any related question.

■ To support the application of the continuous trigger of coverage in environmentally-related property damage matters, Detrex cites several cases. One of these cases is *New Castle County v. Continental Casualty Company*, 725 F.Supp. 800 (D.Del.1989) (*New Castle III*). The county brought its action for a declaratory judgment seeking a declaration that 12 insurance companies must defend and indemnify the county for claims arising from pollution leaking from two county landfills, Llangollen and Tybouts Corner. The County and 11 of the insurance companies settled before trial. The case was tried on the merits solely as to Continental Casualty Company for claims brought for damages caused by the Tybouts Corner operation.

The *New Castle III* court observed that "applying both *AC & S [Inc. v. Aetna Casualty & Surety Co.*, 764 F.2d 968 (3rd Cir.1985)] and *Keene [Corp. v. Ins. Co. of N. America*, 667 F.2d 1034 (D.C.Cir.1986)], the *LAQ* court concluded that if any part of the injurious process took place during the policy period, the policy would be triggered." *New Castle III, supra*. The *New Castle III* court was

> cognizant of recent cases that require a showing of "actual injury" or "injury-in-fact" in order for a policy to be triggered. *See e.g., Triangle Publications, Inc. v. Liberty Mutual Insurance Co.*, 703 F.Supp. 367, 371 (E.D.Pa.1989; *Uniroyal, Inc. v. Home Insurance Co.*, 707 F.Supp. 1368, 1388 (E.D.N.Y.1988).

Courts that have adopted this standard in a continuous injury context have had to abandon a precise determination of when injury in fact did occur because of the evidentiary problems posed.

The court then recounted

In *Eagle–Picher Industries v. Liberty Mutual Insurance Co.*, 682 F.2d 12 (1st Cir.1982) (*"Eagle–Picher ("*), *cert denied sub nom., Froude v. Eagle–Picher Indus.*, 460 U.S. 1028 [103 S.Ct. 1279, 75 L.Ed.2d 500] (1983), the First Circuit held that coverage for ·asbestos related diseases was triggered when a disease became diagnosable. *Id.* at 25. The district court's first attempt at applying this standard was appealed. The circuit court, in its second look at the case, accepted the district court's "conclusion that an individual date of diagnosability is impossible to discern.... The question then bec[omes] how best to *approximate the date...." Eagle–Picher Industries v. Liberty Mutual Insurance Co.*, 829 F.2d 227, 234–35 n. 11 (1st Cir. 1987) (*Eagle–Picher II*) (emphasis added).

*New Castle III, supra* (footnote omitted). The court concluded

As in the *Eagle–Picher II* scenario, it would be impossible in this case to determine when the first molecule of contaminant damaged neighboring property, or at what rate the contamination spread. This Court will not impose on either party the task of proving the impossible.

*Ibid.* The *New Castle* court went on to find application of the "continuous trigger ... appropriate." Since the county had shown that "new injury continuously occurred through the CNA policy periods, both of CNA's primary policies were triggered." *New Castle III, supra*, quotes *New Castle I*, 673 F.Supp. 1359 (D.Del. 1987) for its holding that "the term 'sudden' means a discharge, dispersal release or escape of pollutants that is unexpected." *Id.* at 1364 (footnote omitted). The *New Castle I* court further held

The word "sudden" in the policies' pollution exclusion clause is ambiguous. Under Delaware law, such an ambiguity in an insurance policy must be construed in favor of the insured.

*Id.* at 1367. In view of the contrary ruling in the recent Sixth Circuit case, *FL Aerospace, supra*, 897 F.2d at 219, this court could not in any event accept this portion of the ruling of *New Castle III*. Notwithstanding, in this court's evidentiary determination as to whether an injury-in-fact has occurred within a particular policy period, the court will bear in mind Judge Latchum's findings, that it would be impossible ... to determine when the first molecule of contaminant damaged neighboring property," *New Castle III, supra*.[8]

In *Triangle Publications, Inc. v. Liberty Mut. Ins. Co., supra* at 370, an insurance declaratory action arising out of an environmental matter, the court held

Under the contract, an "occurrence" is defined as

an accident, including injurious exposure to conditions, which results, during the policy period in bodily injury or property damage neither expected nor intended by the parties from the standpoint of the insured.

The plain meaning of the term "occurrence," as used in the CGL policy, is clear. It is (1) an accident (2) which results (3) in property damage (4) during the policy period. Stated another way, an actual injury must occur during the time the policy is in effect in order to be indemnifiable or compensable. Any other interpretation is simply not supported by the CGL policy language. *See generally American Home Products Corporation v. Liberty Mutual Insurance Company*, 565 F.Supp. 1485, 1500–03 (S.D.N.Y.1983), *affirmed as modified*, 748 F.2d 760 (2d Cir.1984) (where the district court discusses the history of the CGL policy).

*Id.* at 370.

As seen, *Triangle Publications* follows *American Home Products Corporation*

---

8. Because *New Castle III* is the most relevant of other environmental cases cited by *Detrex*, the court does not discuss *Township of Gloucester v. Maryland Casualty Co.*, 668 F.Supp. 394 (D.N.J.

1987), or *Solvents Recovery Service of New England, Inc. v. Hartford Insurance Company, et al.*, Superior Court of New Jersey Law Division, Union County Docket No. L–25610–83.

[AHP], *supra.* In *American Home Products,* AHP moved for summary judgment after discovery was completed. In part, it contended that the policies should be read as providing "either (a) that coverage was triggered if exposure, or injury, or manifestation occurred during the policy period, or (b) that regardless of when the injuries occurred or became manifest, coverage was triggered if exposure occurred during the policy period." *American Home Products,* 748 F.2d at 762. Opposing AHP's motion, Liberty argued "that the trigger-of-coverage clause was unambiguous and provided coverage *only* when an injury became manifest within the policy period." *Id.* (emphasis added).

The Second Circuit agreed with the district court's conclusion

> [S]ubstantially for the reasons stated in its opinion, that the trigger-of-coverage clause unambiguously provides for coverage based upon the occurrence during the policy period of an injury in fact. We reject only so much of the court's decision as holds that "injury in fact" means an injury was "diagnosable" or "compensable" during the policy period.

*American Home Products,* 748 F.2d at 764.

In *Abex Corp. v. Maryland Casualty Co.,* 790 F.2d 119 (D.C.Cir.1986) the D.C. Circuit reviewed the district court's partial summary judgment granted to Abex (sued in 200 pending asbestos tort actions), holding that "the insurers 'are obliged to defend and pay for the asbestos claims and lawsuits against Abex and to pay its defense costs in accordance with'. . . . *Keene Corp. v. Insurance Co. of North America. Abex,* 790 F.2d at 121 (footnote omitted).

The court determined that New York law applied and that it should follow *American Home Products Corp. v. Liberty Mutual Insurance Co.* It ruled

> because *Keene* is inconsistent with both *American Home Products* and our own reading of the insurance contracts, we adopt the *American Home Products* interpretation that the insurer's obligation to indemnify Abex arises when the as-

bestos causes real bodily injury during the policy period.

*Abex,* 790 F.2d at 121. At a later point, the court repeated *"American Home Products* is more consistent with our own reading of the insurance contracts than is *Keene." Id.* at 126 (footnote omitted).

The court rejected any ambiguity in the language

> The plain language of the definition of "occurrence" used in the CGL policy requires exposure that "results, *during the policy period,* in bodily injury" in order for an insurer to be obligated to indemnify the insured. The unambiguous meaning of these words is that an *injury*—and not mere exposure—must result *during the policy period.* The CGL policies expressly distinguish exposure from injury; to equate the two as urged by Abex is to ignore this distinction. Any argument that mere exposure—without injury—triggers liability is simply unsound linguistically. Additionally, the manifestation theory, too, is inconsistent with the definition of "occurrence." Although the language of these policies demands that the insured prove that an exposure caused an injury during the policy period, it imposes no requirement that the injury be discovered at that time.

*Id.* at 127 (emphasis in original).

*Dow Chemical,* 724 F.Supp. 474 (E.D. Mich.1989), concurs with the *American Home Products* holding that the occurrence clause is not ambiguous, and that under its plain meaning, injury in fact triggers coverage. Chief Judge Churchill, of the Eastern District of Michigan, declares

> The Court's confidence in its interpretation . . . is reinforced by the Second Circuit's reasoning in *American Home Prods. Corp. v. Liberty Mutual Ins. Co.,* 748 F.2d 760, 764 (2d Cir.1984) (rejecting manifestation and exposure theories in favor of injury in fact approach).

*Id.* at 481, n. 10.

This court also concludes that the "occurrence" clause is not ambiguous. This court believes that faced with the question, the Michigan Supreme Court would adopt the

injury in fact trigger of coverage developed by Judge Sofaer, as modified by the Second Circuit in *American Home Products;* and accepted and applied by the D.C. Circuit in *Abex,* by Judge Green in *Triangle Publications, supra,* and by Chief Judge Churchill in *Dow Chemical, supra.* This court, therefore, adopts this trigger coverage.

Detrex's motion for summary judgment, urging this court to prescribe a continuous trigger of coverage as a matter of law, is denied. For each relevant site, it will be essential to take evidence and determine whether Detrex has shown an injury in fact that triggers coverage.

### III.

### B.

The next and final issue involves the subject of "allocation." In its opening brief, plaintiff Detrex makes the following three assertions with regard to allocation:

1) [I]f any property damage takes place within a given Wausau policy period, that policy is triggered to provide coverage for Detrex's entire liability for the damage.

2) Detrex may choose the triggered policy that will pay for Detrex's liability in an Environmental Action.

3) Wausau may not allocate costs through the "other insurance" clauses in its policies so as to impose any of its costs on Detrex.

*See* Plaintiff's Opening Brief at 55.

From these arguments it seems that Detrex is directing this segment of its summary judgment motion at Wausau's obligations to indemnify Detrex for any established liability. Therefore, in its rulings on "allocation," the court does not intend to affect or modify its rulings on Wausau's duty to defend. However, it is evident that as to any of Detrex's policies with Wausau, a triggering of coverage of such policy would subsume a duty to defend.

In discussing the "trigger of coverage issue," *supra* at pp. 1319–25 this court adopted the injury-in-fact trigger of coverage. However, the possibility was left open that this ruling might be modified if,

under the evidence, it is "impossible ... to determine when the first molecule of contaminant damaged neighboring property." *See* p. 1323, *supra.*

■ Turning to the question of indemnity, application of the injury-in-fact trigger of coverage necessarily will require, but must await, the introduction of pertinent evidence. However, as to any policy that is triggered, this court finds that such policy must provide coverage for all damages directly and proximately resulting from the "occurrence" which caused injury-in-fact during that policy period. Additionally, should the evidence make it impossible to determine when the pollution or contamination of "neighboring property" occurred, the question of which policies are triggered must await the development of pertinent facts. In any event, without a more complete factual record regarding the "occurrences," the question of allocation, which necessarily requires a determination as to which policies have been triggered, is not appropriate for summary judgment at this time.

■ With regard to its third assertion, Detrex states

[A]n insurance company may not allocate liability under "other insurance" clauses so as to impose any defense or indemnity costs upon the policyholder, either directly, or through deductibles, retrospective premium provisions, or side indemnity agreements.

Detrex's December 12, 1989 Reply Brief at 50. Detrex refers to several cases in support of the aforementioned statement. One such case is *Air Products & Chemicals, Inc. v. Hartford Accident and Indemnity Co.,* 707 F.Supp. 762 (E.D.Pa. 1989). In the *Air Products* case, the court states

For the above reasons, I hold that the carrier that issued a covering policy may not, pursuant to its "other insurance" provision, allocate liability among other carriers in such a way as to impose liability on plaintiff, whether by means of deductibles, retrospective premiums, or side indemnity agreements. I further

hold that if a covering policy contains such a provision, the provision is to apply on its face as to plaintiff, and the insurers are then to allocate their respective liability for the loss pursuant to their "other insurance" clauses. *Pacific Power & Light Co. v. Transport Indemnity Co.,* 460 F.2d 959, 962 (9th Cir.1972); *Keene,* 667 F.2d at 1040.

*Air Products,* 707 F.Supp. at 771 (footnote omitted). On this point, this court is in agreement that the "other insurance" clauses in the Wausau insurance policies cannot be used to impose additional liability on Detrex, by way of deductibles or otherwise, should any of such policies be found to be triggered. In addition, this interpretation of the "other insurance" clause applies to the duty to defend, as well as the duty to indemnify.

### III.

### C.

The submissions of the parties reveal that with regard to the issue of aggregate limits, the parties are in disagreement as to how the Wausau policy premiums were rated. Detrex argues

> Although the relevant policy language changed somewhat over the years, all of the Wausau policies provide that property damage liability arising out of the premises or operations hazards is subject to an aggregate limit of liability only if the premium for premises or operations hazards is rated on a remuneration basis.

Detrex's Opening Brief at 59. Detrex then goes on to argue that the "manufacturing premises or operations" coverage was rated on a "sales" basis. As to the post–1964 Wausau policies, Detrex argues

> [T]he policies rated the premiums for all of the hazards, including premises or operations, on a sales basis.... Thus, according to the policy language, the post–1964 policies Wausau sold to Detrex have no aggregate limits applicable to the Environmental actions.

Detrex's Opening Brief at 62.

Wausau, in turn, argues

> Exhibit A to the Hancock affidavit (as well as numerous other documents in Wausau's underwriting file for the Detrex account) clearly indicates that Detrex's manufacturing premises and operations were rated on a remuneration basis, i.e. on the basis of payroll figures requested by and provided to Wausau for this purpose by Detrex. (Exhibit 61, Hancock Aff. § 11.)

Wausau's December 12, 1989 Reply Brief at 68. Thus, after reviewing the parties' submissions on the issue of aggregate policy limits, it is clear to the court that the parties have demonstrated the existence of a "genuine issue of material fact" as to how the relevant policy hazards were rated. Accordingly, plaintiff Detrex's motion for summary judgment on the issue of aggregate limits is DENIED.

Without recapitulating, the several prior rulings of this court are found at pp. 1311, 1315, 1317, 1319, 1324, 1325 and 1326. With reference to each of said rulings,

It is so ordered.